IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

MICHAEL RAY STAFFORD,                )
CHARLES SMITH and DOUGLAS SMITH,     )
individually, and on behalf of those )
similarly situated,                  )
                                     )
        Plaintiffs,                  )
                                     )
    v.                               )    Case No. 1:17-cv-289-JMS-MJD
                                     )
ROBERT E. CARTER, JR.,               )
MICHAEL MITCHEFF, M.D.,              )
MONICA GIPSON, R.N.,                 )
PAUL TALBOT, M.D.,                   )
MICHAEL PERSON, M.D.,                )
HOUMAN KIANI, M.D.,                  )
CORIZON HEALTH, INC.,                )
CORIZON, LLC, and                    )
WEXFORD OF INDIANA, LLC,             )
                                     )    Complaint – Class Action
        Defendants.                  )    Jury Trial Requested

## FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs, by counsel, now file their First Amended Complaint, pursuant to FED.

R. CIV. P. 15(a)(1)(B), and state as follows.[1]

## INTRODUCTION

1.      The named plaintiffs are state prison inmates incarcerated in Pendleton

Correctional Facility, Pendleton, Indiana ("PCF"), who have tested positive for the

Hepatitis C virus ("HCV"), a chronic disease primarily affecting the liver that can lead to

cirrhosis, liver failure, cancer, and other serious and potentially life-threatening

conditions. Plaintiffs allege that Defendants have failed to provide medical treatment for

---

[1] Newly-added parties in bold.  Defendant Wexford of Indiana, LLC (*see infra* at ¶ 18), on information and belief, has contracted with the State of Indiana Department of Corrections ("DOC") to provide health care to inmates incarcerated by the DOC. Plaintiffs have also added Corizon, LLC, as a Defendant; and have dismissed the DOC by notice.

HCV that meets the recognized standard of care in the United States.

2.      The standard of care requires that HCV be treated with certain direct-acting antiviral ("DAA") oral medications approved by the U.S. Food and Drug Administration ("FDA"). This standard is set forth in the clinical guidelines and treatment recommendations developed by the nation's preeminent medical and scientific societies specializing in the study and treatment of HCV, which have been cited by the Federal Bureau of Prisons ("FBOP"). These guidelines are available online and are regularly updated to incorporate the most current research.[2]

## JURISDICTION, VENUE, AND CAUSES OF ACTION

3.      This Court has original subject matter jurisdiction of the federal questions presented herein pursuant to 28 U.S.C. §§ 1331 and 1343.

4.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), for some of or all the Defendants reside in this judicial district, and the events or omissions giving rise to these claims arose here.

5.      Plaintiffs set forth claims under the Eighth and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. § 1983; Titles II and III of the Americans with Disabilities Act, as amended, 42 U.S.C. § 12131 *et seq.* (the "ADA"); and the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 791 *et seq.* (the "Rehabilitation Act").

6.      Declaratory relief is authorized by Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202.

---

[2]http://hcvguidelines.org/, last accessed January 27, 2017; *and see* http://www.bop.gov/resources/pdfs/hepatitis_c.pdf, last accessed January 27, 2017.

## PARTIES

*PLAINTIFFS*

7.     Michael Ray Stafford, an inmate of the Indiana Department of Corrections ("DOC") at PCF, was informed by DOC personnel or agents that he tested positive for HCV after he was the victim of an assault by another inmate who infected him with HCV-positive blood products, prior to October 2013.

8.     Charles Smith, an inmate of DOC at PCF, was informed by DOC personnel or agents that he was HCV-positive when he was incarcerated at the DOC facility in Michigan City, Indiana, prior to October 2013.

9.     Douglas Smith, an inmate of DOC at PCF, was informed by DOC personnel or agents he was HCV-positive prior to October 2013.

*DEFENDANTS*

10.     Commissioner Robert E. Carter, Jr., an adult individual, is the duly appointed Commissioner of Corrections of the DOC, is responsible for HCV policy and the administration and supervision of HCV treatment staff within DOC, and is sued in his official capacity for actions and omissions made under the color of law.

11.     Michael Mitcheff, M.D., an adult individual, is the Chief Medical Officer of the DOC, is responsible for medical services within DOC, including HCV diagnosis and treatment, and is sued in his individual and official capacities for actions and omissions made under color of law.

12.     Monica Gipson, R.N., an adult individual, is DOC's Director of Health Services, responsible for medical services within DOC, including HCV diagnosis and treatment, and is sued in her individual and official capacities for actions and omissions

made under color of law.

13.    Paul Talbot, M.D., an adult individual, at all relevant times is or was a treating physician at PCF, with the obligation to provide the current standard of care for HCV, is sued in his individual capacity for actions and omissions made under color of law.

14.    Michael Person, M.D., an adult individual, at all relevant times is or was a treating physician at PCF, with the obligation to provide the current standard of care for HCV, is sued in his individual capacity for actions and omissions made under color of law.

15.    Houman Kiani, M.D., an adult individual, at all relevant times is or was a treating physician at PCF, with the obligation to provide the current standard of care for HCV, is sued in his individual capacity for actions taken and omissions made under color of law.

16.    Defendant Corizon Health, Inc., is a for-profit foreign company doing, or which did, business in the State of Indiana, with corporate offices located at 105 Westpark Drive, Suite 200, Brentwood, Tennessee; and a principal office at 3737 N. Meridian St., Indianapolis, Indiana, and is and was a recipient of federal funds. The registered agent for Corizon Health, Inc., is CT Corporation System, 150 West Market St., Ste. 800, Indianapolis, Indiana, 46204.

17.    Defendant **Corizon, LLC**, is a for-profit foreign company doing, or which did, business in the State of Indiana, with corporate offices located at 103 Powell Court, Brentwood, Tennessee; and is and was a recipient of federal funds. The registered agent for Corizon, LLC, is CT Corporation System, 150 West Market St., Ste. 800, Indianapolis, Indiana, 46204. (Hereinafter Corizon Health, Inc., and Corizon, LLC, will

be referred to collectively as "Corizon.")

18.     Defendant **Wexford of Indiana, LLC** ("Wexford"), is a for-profit company doing business in the State of Indiana, with corporate offices and a principal office located at 9152 Kent Avenue, Indianapolis, Indiana, and is a recipient of federal funds. The registered agent for Wexford is Douglas P. Long, 500 N. Meridian St., Ste. 400, Indianapolis, Indiana, 46204.

19.     Upon information and belief, Corizon was under contract or otherwise obligated to provide medical care to incarcerated inmates for the State of Indiana at all relevant times until and through March 31, 2017.

20.     Upon information and belief, Wexford is under contract or otherwise obligated to provide medical care to incarcerated inmates for the State of Indiana at all relevant times beginning and since April 1, 2017.

21.     At all times relevant to this action, Defendants Corizon and Wexford, were and are private actors that were under contract or otherwise obligated to provide medical care to incarcerated inmates for the State of Indiana.  Because their conduct is fairly attributable to the State of Indiana, Corizon and Wexford acted and act under color of state law, as described herein.  *See*, *West v. Atkins*, 487 U.S. 42, 54 (1988).

22.     Plaintiffs sue Defendants for the creation and implementation of policies that have directly inflicted harm and demonstrated deliberate indifference to Plaintiffs' disability, disease, and serious medical needs; and sue Defendants for their deliberate indifference to Plaintiffs' disability, disease, and serious medical needs, in violation of the Eighth and Fourteenth Amendments to the United States Constitution, the ADA and the Rehabilitation Act. The policies, harm, deliberate indifference and damages are ongoing, and Plaintiffs seek declaratory and injunctive relief and compensatory damages, inter alia.

## NATURE OF THE CASE

_The Hepatitis C Virus_

23.     HCV is a disabling, chronic and easily spread blood-borne disease that substantially impairs the digestive and circulatory system as it destroys the liver and kills the patient. As a result, HCV substantially impairs major life activities of eating, walking, moving, self-care, normal psychological and emotional functioning, and life itself.

24.     The standard of care for HCV requires treatment with FDA-approved DAA drugs.

25.     HCV's overt symptoms are often subtle, and include lethargy, fatigue, non-specific pain, skin rashes and jaundice, while HCV destroys the circulatory system, kidney and liver function of its victims. HCV has been a growing silent epidemic since it was first discovered in 1989. Today, approximately half of the three-to-four million or more Americans infected with HCV are not aware of their infected status.[3]

26.     Before the new era in HCV treatment began in late 2013, HCV treatment consisted of highly individualized drug "cocktails" combined with weekly toxic _Interferon_ injections that lasted nearly a year. _Interferon_ side effects included debilitating flu-like symptoms. Cure-rates were under 50%, and there was no single standard of care protocol because treatment varied significantly. _See_, _e.g._, _Roe v. Elyea_, 631 F.3d 843, 863-67 (7th Cir. 2011).

_October 2013: FDA Breakthrough Cure for HCV_

27.     The bleak prospects for HCV-infected patients changed completely in October 2013, when the FDA approved new "breakthrough" DAA drugs that cured HCV in only 12 weeks with daily oral medication, at a 95% rate.

---

[3] http://www.hcvguidelines.org/, last accessed January 27, 2017.

28.     By late 2013, the three relevant medical societies -- the American Association for the Study of Liver Disease ("AASLD"), the Infectious Disease Society of America ("IDSA"), and the International Antiviral Society-USA (IAS-USA) -- convened thirty experts in gastroenterology, hepatology, and infectious diseases to constitute a guidance panel (a.k.a. the "HCV Guidance Panel") to advise all practitioners who treat HCV.[4]

29.     The HCV Guidance Panel was convened to advise HCV-treating medical practitioners of the standard of care by creating a website to provide:

> ...[U]p-to-date recommendations for HCV practitioners on the optimal screening, management and treatment for adults with HCV infection in the United States, using a rigorous review process to evaluate the best available evidence.... This [website] was conceived as a living document that would reside online and undergo real-time revisions as the field evolved.[5]

_Clearly-Established Rights Regarding HCV in Particular_

30.     The Defendants have violated Plaintiffs' clearly established rights under the Eighth and Fourteenth Amendments to the United States Constitution by failing to adhere to the HCV Guidance Panel's standard of care because:

a.  Practitioners are legally obliged to prescribe lifesaving medication required by the current standard of care;

---

[4] The origins, purpose and process of the HCV Guidance Panel and its website are explained by the AASLD/IDSA HCV Guidance Panel (2015), "Hepatitis C guidance: AASLD-IDSA recommendations for testing, managing, and treating adults infected with hepatitis C virus," _Hepatology_, Vol. 62, Issue 3, 932-954, Nov. 3, 2015 (attached as Exhibit 1); also available online at http://onlinelibrary.wiley.com/doi/10.1002/hep.27950/full, last accessed January 27, 2017.
[5] _Id._ at 932

    b.  Failing to provide the standard of care for HCV can cause Plaintiffs cognizable harm (*see*, *e.g.*, *Erickson v. Pardus,* 551 U.S. 89 (2007)); and

    c.  Exposing uninfected inmates to infection from HCV-positive inmates can constitute deliberate indifference.  *See*, *e.g.*, *Helling v. Mckinley*, 509 U.S. 25, 33 (1993) (citing *Hutto v. Finney*, 437 U.S. 678, 682 (1978)).

31.  Each day the Defendants breach the standard of care, the likelihood of cirrhosis of the liver, liver cancer, liver transplant, and death from HCV increases for each named Plaintiff and each member of the Class they represent; as does the likelihood of infection for those in DOC facilities and the general public after their release.

32.  On February 24, 2016, the HCV Guidance Panel explicitly recommended, without reservation, that all HCV treatment practitioners prescribe the DAA drugs for all HCV-positive patients.  The Veterans Health Administration adopted this policy on or about this same day.

## FACTS

33.  Each named Plaintiff is confined at PCF and has been has been diagnosed by Defendants as HCV-positive prior to the filing of the Complaint; has requested treatment with the DAA drugs; has been denied such treatment by Defendants and the DOC; and has exhausted internal remedies.

34.  The DOC screens all inmates for HCV and HIV infections: and Defendants are thus aware of each inmate who is HCV-positive and HIV co-infected, and who pose a risk of infecting other inmates in the prison population and the general public upon release.

35.  On information and belief, the DOC has acknowledged that approximately 190 inmates at PCF are HCV-positive.

36.     The standard of care for HCV-positive patients requires they be treated with DAA drugs, and be cured in 12 weeks in order to: (a) prevent the spread of the epidemic, and (b) prevent deterioration of the patients' internal organs.

37.     Because of the short-term costs of treating HCV-positive inmates in the DOC system, Defendants Corizon and Wexford have deliberately instituted policies of rationing anti-HCV medication and non-compliance with the standard of care.

38.     Upon information and belief, Defendants have conspired to avoid treating HCV-positive inmates according to the standard of care for reasons of administrative convenience and cost, both of which are unrelated to the medical needs of individual inmates.

39.     As a result of their failure to treat HCV-positive inmates appropriately, Defendants have exposed named Plaintiffs and other HCV-positive inmates to significant harm, and placed the entire prison population and the general public to greatly increased risk of serious harm and injury from HCV infection by spreading the infection throughout the prison population and beyond.

40.     Upon information and belief, at all relevant times, all Defendants had actual knowledge of the Plaintiffs' serious medical needs, and of the HCV Guidance Panel Guidelines, through websites, professional journals, professional meetings, FBOP publications and general media.

41.     Upon information and belief, at all times relevant to this lawsuit, Defendants were aware that named Plaintiffs have been infected with HCV and are aware of each member of the proposed class who is also HCV-positive (*i.e.*, the 190 inmates at PCF alone, and all others inmates incarcerated by the DOC who are HCV-positive).

42.     On information and belief, at all times relevant to this lawsuit, Defendants have willfully delayed, denied, and deliberately and indifferently interfered with Plaintiffs' HCV treatment for non-medical reasons, contrary to the standard of care, by withholding HCV treatment; and by permitting HCV-infected persons to remain infectious to others.

43.     At all times relevant to this lawsuit, Defendants have willfully and knowingly exposed uninfected inmates to life-threatening HCV infections for non-medical reasons by withholding the standard of care for inmates who are HCV-positive.

44.     Should Defendants treat Plaintiffs and all similarly situated persons according to the standard of care, HCV would be eliminated from the blood pool of the DOC.

45.     Defendants' knowing refusal to treat Plaintiffs pursuant to the standard of care prolongs and increases the harm HCV is causing to named Plaintiffs' and inmate Class members' bodies and life expectancies, and demonstrates deliberate indifference to their serious medical needs.

46.     Plaintiffs also sue Defendants for the creation and implementation of policies that have:

a.  directly inflicted harm upon, and demonstrated deliberate indifference to the disability, disease, and serious medical needs of Plaintiffs, in violation of the Plaintiffs' clearly established rights under the Eighth Amendment, as incorporated by the Fourteenth Amendment, and

b.  discriminated against Plaintiffs on the basis of their disability, in violation of Title II and III of the ADA and the Rehabilitation Act.

<u>Class Allegations</u>

47.     Plaintiffs bring this action on behalf of themselves and others similarly situated (the "Class") pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2).

48.     Plaintiffs seek to represent the following Class on claims for declaratory and injunctive relief and damages: all persons (male and female) incarcerated in DOC facilities with 12 weeks or more remaining on their sentences, who test HCV-positive and wish to receive the standard of care treatment.

49.     The requirements of Fed. R. Civ. P. 23(a) are met by this action.

50.     The numerosity requirement of Fed. R. Civ. P. 23(a)(1) is met, for in addition to the approximately 190 HCV-positive inmates at PCF alone, there are likely a significant number of persons (male and female) incarcerated in other DOC facilities with diagnosed and undiagnosed HCV. The number of persons who are members of the Class described above is so large that joinder of all members in one action is impracticable.

51.     Questions of law and fact are common to the Class pursuant to Fed. R. Civ. P. 23(a)(2), including but not limited to: (1) the standard of care; (2) whether the current DOC policy must be replaced with the standard of care; (3) whether Defendants' refusal to adhere to the standard of care violates the Class members' rights under the Eighth Amendment as incorporated by the Fourteenth Amendment; (4) whether the Defendants' refusal to adhere to the standard of care violates: (a) the ADA, and (b) Section 504 of the Rehabilitation Act; and (5) the declaratory and prospective equitable relief in standard of care treatment of HCV predominate over any unique relief demands of Plaintiffs or Class members.

52.     Plaintiffs' claims are typical of those of the Class members, pursuant to Fed. R. Civ. P. 23(a)(3), because named Plaintiffs and all Class members were injured by

the same wrongful policy and practices of Defendants as described in this Complaint; and are based on the same legal theories and factual questions relating to the standard of care.

53.     Plaintiffs' claims are representative of those of the Class, pursuant to Fed. R. Civ. P. 23(a)(4), because (1) Plaintiffs will fairly and adequately protect the interests of the Class; (2) Plaintiffs have no interests contrary to the Class they seek to represent; (3) Plaintiffs are represented by competent and skilled counsel whose interests are aligned with the interests of the Class; (4) relief concerning named Plaintiffs' rights under the laws herein alleged and with respect to the Class would be proper; (5) Defendants have acted or refused to act with respect to the Class as a whole; and (6) Counsel for Plaintiffs have developed a particular expertise in the rapidly changing science underlying the changes in the standard of care for HCV practitioners.

54.     A class action satisfies Fed. R. Civ. P. 23(b)(3), because: (1) it is superior to other available methods for the fair and efficient adjudication of this litigation since joinder of all members of the Class is impracticable; (2) the number would prove unduly burdensome and inefficient for the Court and parties;  (3) because a common set of facts, grievances and remedies predominate over individual issues, relief by a single court is in the interest of all parties; and (4) conduct of this action as a class action will protect the rights of all Class members and promote judicial efficiency and consistency.  Notice can be provided to Class members by United States Mail.

## LEGAL CLAIMS

### COUNT I
### Eighth Amendment via 42 U.S.C. § 1983
### Dr. Talbot, Dr. Person, Dr. Kiani, Dr. Mitcheff and Nurse Gipson, in their
### Individual Capacities, Corizon and Wexford

55.     Plaintiffs reallege and incorporate herein by reference paragraphs 1 through 54 of this Complaint.

56.     Plaintiffs and all persons similarly situated have a serious medical need which requires HCV treatment in accordance with the standard of care.

57.     Dr. Talbot, Dr. Person and Dr. Kiani, while acting under the color of law, were aware of the named Plaintiffs' serious medical needs, were deliberately indifferent to such needs, and were personally involved with the denial of care to Plaintiffs by denying them medication required by the standard of care.

58.     Within the scope of their employment or contract by, with or through Corizon, Wexford, and/or the DOC, Dr. Talbot, Dr. Person and Dr. Kiani have and/or had the responsibility to care for the Plaintiffs according to the standard of care, but breached this standard of care and continue to do so, all of which has caused harm to Plaintiffs.

59.     Part or all of the foregoing deliberate indifference was and remains due to these Defendants' reliance on DOC policies or protocols that fail to require the treatment of inmates with HCV pursuant to the standard of care.

60.     Defendants Dr. Mitcheff and Nurse Gipson were and are aware of named Plaintiffs' serious medical needs for treatment for HCV in accordance with the standard of care, and were and are personally involved in the denial of care to Plaintiffs.

61.     Dr. Mitcheff and Nurse Gipson were and remain deliberately indifferent to Plaintiffs' serious medical needs by failing to enact policies that would assure that the named Plaintiffs and Class members would obtain the standard of care treatment for HCV; and/or while abiding by policies that would not assure the named Plaintiffs and

13

Class members would obtain the standard of care treatment for HCV; while acting under the color of law.

62.     At all times relevant to this action, Corizon and Wexford were private actors under contract or otherwise obligated to provide medical care to incarcerated inmates for the State of Indiana. Because their conduct is fairly attributable to the State of Indiana, Corizon and Wexford acted under color of state law at all relevant times.

63.     Corizon and Wexford, by and through their agents, employees, or representatives, were aware of the serious medical needs of Plaintiffs and persons similarly situated.

64.     Corizon and Wexford were deliberately indifferent to Plaintiffs' serious medical needs by failing to enact and abide by policies to assure that the named Plaintiffs and Class members would obtain the standard of care for HCV treatment.

65.     The actions and omissions of Corizon and Wexford described herein constitute a violation of the rights secured to Plaintiffs and persons similarly situated by the Eighth Amendment to the United States Constitution, as incorporated by the Fourteenth Amendment to the United States Constitution.   The actions and omissions of Wexford described herein also constitute ongoing violations.

66.     Defendants, Dr. Talbot, Dr. Person and Dr. Kiani, Dr. Mitcheff, Nurse Gipson, Corizon and Wexford, knew and know of the substantial risk that Plaintiffs suffer from progression of HCV infections, which foreseeably lead to exacerbated liver or kidney malfunction, liver fibrosis, liver cirrhosis, liver cancer, expensive liver transplant, and/or death by liver malfunction.

67.     Said Defendants, in the course and scope of their employment by or contractual obligations with the DOC, were and remain deliberately indifferent to the

need for medical treatment of Plaintiffs, and persons similarly situated, and have proximately caused Plaintiffs harm.

68.     The actions and omissions of the Defendants described herein constitute a violation of the rights secured to Plaintiffs and persons similarly situated by the Eighth Amendment to the United States Constitution, as incorporated by the Fourteenth Amendment to the United States Constitution.

69.     As a proximate result of the actions and omissions discussed in this count, Plaintiffs and persons similarly situated were injured, endured physical pain and mental suffering, experienced mental anguish and emotional distress and will continue to suffer from these injuries in the future.

## COUNT II
### Eighth Amendment via 42 U.S.C. § 1983
### Commissioner Carter, Dr. Mitcheff and Nurse Gipson, in their
### Official Capacities

70.     Plaintiffs reallege and incorporate herein by reference paragraphs 1 through 69 of this Complaint.

71.     Plaintiffs and all persons similarly situated had and have a serious medical need for standard of care treatment of their HCV.

72.     Defendants, Commissioner Carter, Dr. Mitcheff and Nurse Gipson, were and are aware of Plaintiffs' and Class members' serious medical needs for standard of care treatment of their HCV.

73.     Said Defendants know, or have reasons to believe, that Plaintiffs and DOC prisoners with HCV are not being treated pursuant to the standard of care.

74.     Said Defendants remain deliberately indifferent to Plaintiffs' serious medical needs by failing to enact policies that would assure that the named Plaintiffs and Class members would obtain the standard of care treatment for HCV.

75.     Said Defendants remain deliberately indifferent to Plaintiffs' serious medical needs by abiding by policies that do not assure the named Plaintiffs and Class members will obtain the standard of care treatment for HCV.

76.     Said Defendants are deliberately indifferent to the substantial risk of progression of the HCV infection of Plaintiffs and all persons similarly infected with the HCV virus, which proximately causes Plaintiffs harm.

77.     Said Defendants are deliberately indifferent to the substantial risk of spreading HCV to the rest of the prison population and the general public by failing to follow the standard of care for treating HCV-infected inmates to eliminate the virus from the prison blood pool.

78.     Plaintiffs seek prospective relief to address the ongoing violations of their rights by said Defendants as described herein.

79.     The actions and omissions of said Defendants described herein, made under color of law, constitute an ongoing violation of the rights secured to Plaintiffs and persons similarly situated by the Eighth Amendment to the United States Constitution, as incorporated by the Fourteenth Amendment to the United States Constitution.

80.     As a proximate result of the actions and omissions discussed in this count, Plaintiffs and persons similarly situated were injured, endured physical pain and mental suffering, experienced mental anguish and emotional distress and will continue to suffer from these injuries in the future.

**COUNT III**
**Title II of the ADA and § 504 of the Rehabilitation Act**
**Commissioner Carter, Dr. Mitcheff and Nurse Gipson, in their**
**Official Capacities**

81.     Plaintiffs reallege and incorporate herein by reference paragraphs 1 through 80 of this Complaint.

82.     Plaintiffs have HCV, a disability and physical impairment that can and does substantially affect the major life activities of digestive systems, circulatory systems, and life itself, of which Defendants were aware; and are qualified individuals with a disability, for the purposes of the ADA.  42 U.S.C. § 12132.

83.     The DOC is a public entity, pursuant to Title II of the ADA.  42 U.S.C. § 12131(1)(A), (B).

84.     Defendants, Commissioner Carter, Dr. Mitcheff and Nurse Gipson, have actual knowledge that progression of HCV can and would foreseeably lead to exacerbated serious medical harms including liver malfunction, liver fibrosis, liver cirrhosis, liver cancer, expensive liver transplant, or even death by liver malfunction.

85.     Said Defendants and the DOC disregarded the substantial risk of progression of the HCV infection by failing to assure that Plaintiffs and Class members would obtain the standard of care treatment for their condition while acting under the color of law.

86.     Said Defendants and the DOC could have reasonably accommodated Plaintiffs' disabilities, so as not to exclude them from participation in, or deny them the benefits of, the federally funded services, programs, or activities of DOC, by reasonably accommodating Plaintiffs' disabilities by providing them with the treatment required by the standard of care; and by not subjecting them to discrimination.

17

87.     Said Defendants and the DOC failed to reasonably accommodate Plaintiffs' known disabilities.

88.     Said Defendants and the DOC subject the Plaintiffs to discrimination by withholding medically appropriate treatment that will cure them of HVC, and thus their disability.  At the same time, these Defendants and the DOC do not withhold life-saving treatments from individuals with different disabilities.

89.     This denial of treatment and discrimination wrongfully violate the ADA and the Rehabilitation Act because Plaintiffs, due to their disability, are excluded from participation in, and are denied the benefits of the services, programs, or activities of a public entity; and/or are subjected to discrimination by any such entity.  *See* 42 U.S.C. § 12132 and 29 U.S.C. § 794(a).

90.     Due to the foregoing failures, Plaintiffs and all other similarly situated qualified disabled persons continue to suffer injuries that include progression of their respective infections, increased symptoms, pain, suffering, fear, diminished enjoyment of life, and decreased life expectancy, in addition to threat of infection and re-infection.

91.     Said Defendants acted with deliberate, reckless, knowing, or intentional disregard and indifference for the established rights, health, and safety of Plaintiffs and those similarly situated, which proximately caused Plaintiffs harm.

92.     The actions and omissions of the Defendants described herein constitute violations of Title II of the ADA and § 504 of the Rehabilitation Act.

93.     As a proximate result of the actions and omissions discussed in this count, Plaintiffs and persons similarly situated were injured, endured physical pain and mental suffering, experienced mental anguish and emotional distress and will continue to suffer from these injuries in the future.

**COUNT IV**
**Title III of the ADA and § 504 of the Rehabilitation Act**
**Wexford**

94.     Plaintiffs reallege and incorporate herein by reference paragraphs 1 through 93 of this Complaint.

95.     Defendant Wexford is aware that Plaintiffs' HCV is a disability and physical impairment that can and does substantially affect the major life activities of Plaintiffs' digestive systems, circulatory systems, and life itself.

96.      Wexford, by and through its agents, employees, or representatives, knows that delay of Plaintiffs' treatment will foreseeably lead to exacerbated serious medical harms including liver malfunction, liver fibrosis, liver cirrhosis, liver cancer, liver transplant and/or death by liver malfunction.

97.     Wexford deliberately disregards and is deliberately indifferent to the substantial risk of progression of the HCV infection by failing to enact policies to assure that the named Plaintiffs and Class members would obtain the standard of care treatment for HCV.

98.     Wexford can reasonably accommodate Plaintiffs' HCV disabilities, so as not to exclude them from participation in, deny them the benefits of federally-funded services, programs, or activities by reasonably accommodating Plaintiffs' HCV disabilities with standard of care treatment.

99.     Wexford fails to reasonably accommodate Plaintiffs' known disabilities, notwithstanding that compliance with the standard of care is not an undue hardship. Wexford wrongfully discriminates against Plaintiffs and Class members on the basis of their HCV disabilities in the "full and equal enjoyment of the goods, services, facilities,

privileges, advantages, or accommodations" that Wexford provides to other inmates incarcerated by the DOC. *See* 42 U.S.C. § 12182(a).

100.    Wexford, as a contracted medical care provider of the DOC, through its agents, employees, or representatives, acted and acts with deliberate, reckless, knowing, or intentional disregard for the rights, health, and safety of the Plaintiffs, which proximately causes Plaintiffs harm.

101.    The actions and omissions Wexford described herein constitute violations of Title III of the ADA and § 504 of the Rehabilitation Act. *See* 42 U.S.C. § 12182 and 29 U.S.C. § 794(a).

102.    As a proximate result of the actions and omissions discussed in this count, Plaintiffs and persons similarly situated were injured, endured physical pain and mental suffering, experienced mental anguish and emotional distress and will continue to suffer from these injuries in the future.

## RELIEF REQUESTED

WHEREFORE named Plaintiffs and all similarly situated persons pray for the following relief:

103.    For named Plaintiffs and members of the Plaintiff Class, such equitable relief as this Court deems just and proper, including, but not limited to, HCV treatment pursuant to the current standard of care;

104.    For Plaintiffs, an award of appropriate compensatory damages for all claims for which compensatory damages are available, against those Defendants who may be liable for such compensatory damages, jointly and severally, in an amount to be determined by jury;

105.    For named Plaintiffs, an award of punitive damages against Defendants,

sued in their respective individual capacities, jointly and severally, for claims arising under the Eighth and Fourteenth Amendments to the United States Constitution, in an amount to be determined at trial by jury; and

106.    Attorney fees, expenses and costs, punitive damages, and all other appropriate relief to which the Court may deem Plaintiffs entitled.

## **REQUEST FOR TRIAL BY JURY**

Plaintiffs, by counsel, hereby request a trial by jury with respect to any issues so triable.

Respectfully submitted,


_s/ Robert A. Katz_
Robert A. Katz
Professor of Law, Indiana University
ROBERT H. MCKINNEY SCHOOL OF
LAW
530 West New York Street
Indianapolis, IN  46202
(317) 278-4791 T
rokatz@iu.edu

_s/ Mark W. Sniderman_
Mark W. Sniderman
SNIDERMAN NGUYEN LLP
47 S. Meridian St., Ste. 400
Indianapolis, IN  46220
(317) 361-4700 T
(317) 464-5111 F
mark@snlawyers.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of Plaintiffs' *First Amended Complaint for Declaratory and Injunctive Relief* was filed electronically on this 17th day of April 2017. Notice of this filing will be sent to the following counsel by operation of the Court's electronic filing system.  Parties and counsel may access this filing through the Court's System.

Benjamin M. L. Jones
Jonathan P. Nagy
OFFICE OF THE ATTORNEY GENERAL
Indiana Government Center South
302 West Washington Street, Fifth Floor
Indianapolis, IN 46204
bejamin.jones@atg.in.gov
jonathan.nagy@atg.in.gov

Jessica L. Liss
Carrie L. Kinsella
JACKSON LEWIS P.C.
7733 Forsyth Blvd., Suite 600
St. Louis, Missouri 63105
Jessica.Liss@jacksonlewis.com
Carrie.Kinsella@jacksonlewis.com

Scott James Preston
Melissa K. Taft
JACKSON LEWIS P.C.
10 West Market Street, Suite 2400
Indianapolis, IN 46204
Scott.Preston@jacksonlewis.com
Melissa.taft@jacksonlewis.com

William R. Lunsford
MAYNARD, COOPER & GALE, P.C.
655 Gallatin Street
Huntsville, AL  35801
blunsford@maynardcooper.com

*s/ Mark W. Sniderman*
Mark W. Sniderman

SNIDERMAN NGUYEN LLP
47 S. Meridian Street, Suite 400
Indianapolis, IN  46204
(317) 361-4700 T
(317) 464-5111 F