UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MICHAEL RAY STAFFORD, <br> CHARLES SMITH, DOUGLAS SMITH, <br>     Plaintiffs, <br>     v. <br> ROBERT E. CARTER, JR., <br> MICHAEL MITCHEFF, M.D., <br> MONICA GIPSON, R.N., <br> PAUL TALBOT, M.D., <br> MICHAEL PERSON, M.D., <br> HOUMAN KIANI, M.D., <br> CORIZON HEALTH, INC., <br> CORIZON, LLC, <br> WEXFORD OF INDIANA, LLC, <br>     Defendants. | No. 1:17-cv-00289-JMS-MJD |

**AMENDED ORDER[1]**

This case arises out of a challenge to policies regarding the treatment of individuals who are incarcerated in Indiana Department of Corrections ("IDOC") facilities and who suffer from the chronic Hepatitis C Virus ("HCV"). Plaintiffs Michael Ray Stafford, Charles Smith, and Douglas Smith ("Plaintiffs") raise claims on behalf of themselves and similarly situated individuals that policies maintained and implemented by the Defendants in this action have resulted in the improper denial of treatment to incarcerated individuals who are infected with chronic HCV. Presently pending before the Court is Plaintiffs' Motion for Class Certification, in which Plaintiffs seek to certify a class involving only their prospective declaratory and injunctive relief claims.

---

[1] The Court issues this amendment to its prior order, [Filing No. 148], to address the designation of class representatives and class counsel, which was inadvertently omitted from the original Order.

1

[Filing No. 99.] For the reasons below, the Court grants Plaintiffs' Motion and certifies, as modified, the proposed class.

# I.
# BACKGROUND[2]

The named Plaintiffs are individuals who are incarcerated at Pendleton Correctional Facility and who have been diagnosed with chronic HCV. [Filing No. 39 at 1.] Defendant Robert E. Carter, Jr. is the Commissioner of Corrections of IDOC, Defendant Michael Mitcheff, M.D. is the Chief Medical Officer for IDOC, and Defendant Monica Gipson, R.N. is IDOC's Director of Health Services (collectively "the State Defendants"). Until March 31, 2017, Defendant Corizon, LLC contracted with the State of Indiana to provide a defined scope of medical services to inmates within IDOC's custody. [Filing No. 111 at 1.] Defendants Houman Kiani, M.D. and Michael Person, M.D. were treating physicians at Pendleton Correctional Facility pursuant to that contract (collectively, along with Corizon, LLC and Corizon Health, Inc., "Corizon"). [Filing No. 111 at 1.] Defendant Wexford of Indiana, LLC ("Wexford") entered into a contract with the State of Indiana to provide medical care to IDOC inmates from April 1, 2017 to the present time. [Filing No. 82 at 9.] Defendant Paul Talbot, M.D. was a treating physician at Pendleton Correctional Facility who first worked with Corizon, and later with Wexford. [Filing No. 111 at 1.]

Plaintiffs' First Amended Complaint alleges that HCV is a "disabling, chronic and easily spread blood-borne disease that substantially impairs the digestive and circulatory system as it destroys the liver… ." [Filing No. 39 at 6; *see also* Filing No. 100-1 at 1-7.] HCV infection

---

[2] The Court is not required to accept as true the First Amended Complaint's factual allegations at the class certification stage. The Court should "make any factual and legal inquiries needed to ensure that the requirements for class certification are satisfied, even if the underlying considerations overlap with the merits of the case." *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 675 (7th Cir. 2001). In resolving this Motion, therefore, the Court considers the First Amended Complaint, Defendants' Answers, and materials submitted in support of the parties' briefing.

generally progresses in two stages: acute infection, which occurs during the first six months of exposure to the virus, and chronic infection. [Filing No. 100-1 at 2.] Approximately 15-25% of infected individuals self-resolve at the acute infection stage, and do not develop chronic infection. [Filing No. 100-1 at 2.] The remaining 75-85% of infected individuals develop chronic HCV. [Filing No. 100-1 at 2.]

Chronic HCV can result in "liver damage, liver failure, liver cancer, or even death." [Filing No. 100 at 3 (citing Filing No. 100-1 at 2).] Plaintiffs allege that in October 2013, the FDA approved new "breakthrough" direct-acting antiviral ("DAA") drugs that can cure HCV in only 12 weeks with daily oral medication, at a 95% cure rate. [Filing No. 39 at 6; *see also* Filing No. 100-1 at 3-5.] A panel of experts known as the HCV Guidance Panel (the "Panel") provides guidelines that represent the standard of care within the medical community for treating HCV.[3] [Filing No. 100 at 4 (citing Filing No. 100-1 at 4).] The Panel recommends treatment for all patients with chronic HCV, except those with short life expectancies that cannot be remediated by treatment, transplantation, or other directed therapy. [Filing No. 100 at 5 (citing Filing No. 100-1 at 4).] Chronic HCV does not self-correct: individuals are infected for life unless their HCV is treated with medication. [Filing No. 100 at 3 (citing Filing No. 100-1 at 3).]

Plaintiffs allege that IDOC screens all inmates for HCV infection, and is therefore aware of each inmate who suffers from the illness, and who poses a risk of infecting other inmates and individuals in the general population following release.[4] [Filing No. 39.] Plaintiffs allege that they all tested positive for HCV while incarcerated within an IDOC facility. [Filing No. 39 at 3;

---

[3] It is unclear whether Defendants deny this allegation.

[4] The State Defendants deny this allegation in their Answer, but as to this Motion, they provide no evidentiary support or other explanation as to how this allegation is incorrect or inaccurate.

Filing No. 74 at 1.] They also allege that Defendants have denied their requests for treatment of their HCV infections.[5] [Filing No. 39 at 8.] Plaintiffs allege that "because of the short-term costs of treating HCV-positive inmates in the DOC system, Defendants Corizon and Wexford have deliberately instituted policies of rationing anti-HCV medication," to a small number of inmates, failing to comply with the standard of care for HCV. [Filing No. 39 at 9.] They claim that "[a]s a result of [Defendants'] failure to treat HCV-positive inmates appropriately, Defendants have exposed named Plaintiffs and other HCV-positive inmates to significant harm, and placed the entire prison population and the general public [at] greatly increased risk of serious harm and injury from HCV infection by spreading the infection throughout the prison population and beyond." [Filing No. 39 at 9.]

Plaintiffs filed their initial Complaint in this Court on January 27, 2017, raising claims on behalf of themselves and those similarly situated. [Filing No. 1.] The operative First Amended Complaint alleges that Defendants have violated the Eighth Amendment to the United States Constitution, the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act by failing to provide the named Plaintiffs and putative class members with treatment for their HCV. [Filing No. 39 at 12-20.] The First Amended Complaint seeks monetary damages on behalf of the named Plaintiffs and prospective injunctive and declaratory relief against the State Defendants and Wexford on the behalf of the class. [Filing No. 39.] Presently pending before the Court is Plaintiffs' Motion for Class Certification, in which Plaintiffs seek to certify a class regarding only

---

[5] For this and all remaining allegations in this paragraph, the Defendants either deny the allegations or assert that they lack information sufficient to either confirm or deny them. Collectively, Defendants have submitted one affidavit in support of their responses to Plaintiffs' Class Certification Motion, [Filing No. 113-1], which the Court discusses below as relevant.

their claims for declaratory and injunctive relief against the state Defendants and Wexford. [Filing No. 99; Filing No. 111.] That Motion is now fully briefed and ripe for the Court's review.[6]

## II.
## LEGAL STANDARD

In deciding whether to certify a class, the Court may not blithely accept as true even the most well-pleaded allegations of the complaint, but must instead "make whatever factual and legal inquiries are necessary under Rule 23" to resolve contested issues. *Szabo v. Bridgeport Machs., Inc.,* 249 F.3d 672, 676 (7th Cir. 2001). Specifically, the Court must find that the putative class satisfies the four prerequisites set forth in Federal Rule of Civil Procedure 23(a). If the putative class does satisfy these prerequisites, the Court must additionally find that it satisfies the requirements set forth in Federal Rule of Civil Procedure 23(b), which vary depending upon which of three different types of classes is proposed.

The four prerequisites under Rule 23(a) are that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Class certification is not appropriate unless the named plaintiff establishes all four prerequisites. *Gen. Tel. Co. of the Southwest v. Falcon,* 457 U.S. 147, 156 (1982). In addition to meeting the prerequisites of Rule 23(a), the proposed class must satisfy one of the conditions of Rule 23(b). *Oshana,* 472 F.3d at 513; *Williams v. Chartwell Fin. Servs.,* 204 F.3d 748, 760 (7th Cir. 2000). Under Rule 23(b)(2), a class action that satisfies Rule 23(a) may be sustained if "the

---

[6] Because Plaintiffs do not seek prospective declaratory and injunctive relief against the Corizon Defendants, they have not filed a response to Plaintiffs' Motion for Class Certification. [*See* Filing No. 111.]

party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

## III.
### DISCUSSION

**A. Whether an Identifiable Class Exists**

In addition to the class certification prerequisites specifically enumerated in Federal Rule of Civil Procedure 23, it is Plaintiffs' burden to prove "that the class is indeed identifiable as a class." Oshana, 472 F.3d at 513. The Court addresses that requirement first.

Plaintiffs propose the following class definition: "All persons who are now, or will in the future be, in the custody of IDOC, diagnosed with chronic HCV, and wish to receive standard of care treatment for their illness but are being denied it." [Filing No. 99 at 1.] The State Defendants argue that the membership in this proposed class is not ascertainable by the Court because: (1) discerning which individuals "wish" to receive standard-of-care treatment requires a subjective analysis of each individual's state of mind; and (2) determining which individuals have been denied standard-of-care treatment will require the Court and medical experts to "carefully review the medical records of each and every offender with chronic [HCV]."[7] [Filing No. 112 at 5-6.] In response, Plaintiffs argue that the proposed class definition is sufficient, because the class may be ascertained by reference to wholly objective criteria. [Filing No. 133 at 4.] In the alternative, however, Plaintiffs propose a modified definition that alleviates any concerns raised by

---

[7] Wexford appears to raise the same argument in its Response in Opposition to Plaintiffs' Motion to Certify a Class, contending that the proposed class is "improperly vague." [Filing No. 113 at 12-13.]

6

Defendants: "All current and future prisoners in IDOC custody who have been diagnosed, or will be diagnosed, with chronic HCV." [Filing No. 133 at 3.]

A district court has broad discretion to certify a class and may modify a proposed class definition if modification will render the definition adequate. *Davis v. Hutchins,* 321 F.3d 641, 649 (7th Cir. 2003). Plaintiffs' "revised" class definition appears to remedy the issues of identifiability raised by Defendants, assuming that any such issues existed. This modified definition is also similar to those certified in recent cases in other jurisdictions involving the treatment of HCV-infected inmates. *See, e.g., Hoffer v. Jones*, 2017 WL 5586877, at *1 (N.D. Fla. Nov. 17, 2017) (defining class as "all current and future prisoners in FDC custody who have been diagnosed, or will be diagnosed, with chronic hepatitis C virus (HCV)"); *Graham v. Parker*, 2017 WL 1737871, at *2 (M.D. Tenn. May 4, 2017) (defining class as "[a]ll persons currently incarcerated in any facility under the supervision or control of the Tennessee Department of Corrections or persons incarcerated in a public or privately owned facility for whom the Tennessee Department of Corrections has ultimate responsibility for their medical care and who have at least 12 weeks or more remaining to serve on their sentences and are either currently diagnosed with Hepatitis C infection or are determined to have Hepatitis C after an appropriate screening test has been administered by the Department of Corrections").

This definition is based only on an objective criterion: whether an individual has been diagnosed with chronic HCV. The Court therefore adopts this modified definition, which is sufficient to establish an identifiable class.

B. Federal Rule of Civil Procedure 23(a)

        *1. Numerosity*

The Court can only certify a class that "is so numerous that joinder of all members is impracticable." Fed. R. Civ. Pro. 23(a)(1). "Although there is no 'bright line' test for numerosity, a class of forty is generally sufficient to satisfy Rule 23(a)(1)." *McCabe v. Crawford & Co.,* 210 F.R.D. 631, 644 (N.D. Ill. 2002); *Hubler Chevrolet, Inc. v. GMC Corp.,* 193 F.R.D. 574, 577 (S.D. Ind. 2000).

Plaintiffs estimate that there are "at least 3,100 members of the proposed class currently incarcerated in IDOC facilities."[8] [Filing No. 100.] They base this estimate on IDOC's statistics regarding the number of inmates in its facilities; the percentage of inmates who have been identified as HCV-positive when tested at intake; and, using available medical research and statistics, the number of HCV-infected inmates who are likely to develop chronic (as opposed to acute) HCV infections. [Filing No. 100 (citing Filing No. 100-1; Filing No. 100-4; Filing No. 100-8; Filing No. 100-9).] Plaintiffs also point out that these estimates do not include individuals who are not now incarcerated in an IDOC facility, but will be in the future, or individuals who are currently incarcerated but will become infected with HCV at a later date. [Filing No. 100 at 13-14.]

In response, the State Defendants' arguments center on Plaintiffs' first proposed definition. They argue that Plaintiffs assume that all of the 3,100 HCV-infected inmates would wish to receive standard-of-care treatment, "but offer nothing to support that claim." [Filing No. 112 at 9.] And they contend that Plaintiffs' estimated number includes individuals for whom direct acting

---

[8] Plaintiffs note that there may be more than 5,500 HCV-infected inmates. [Filing No. 100 at 13.] The Court relies on the low end of Plaintiffs' estimates for purposes of certification.

8

antiviral treatment will not be recommended, further reducing the Plaintiff class.[9] [Filing No. 112 at 10.]

As the Court discussed above, it adopts a modified version of the class definition, which removes the elements regarding standard-of-care treatment. The State Defendants' arguments, therefore, are no longer relevant to the proposed definition.[10] Plaintiffs have submitted evidence suggesting that the low end of the estimated class size is 3,100, and joining that many class members, geographically dispersed among many IDOC facilities, would be impracticable. *See, e.g., Graham,* 2017 WL 1737871, at *3 (certifying class of HCV-infected inmates estimated at 3,487); *Postawko v. Mo. Dep't. of Corr.*, 2017 WL 3185155, at *6 (W.D. Mo. July 26, 2017) (certifying class of at least 2,000 HCV-infected inmates who were denied treatment with DAAs). The Court readily finds that a class size of at least 3,100 members would render joinder of the parties impracticable and is sufficient to satisfy Rule 23(a)(1).

### 2. Commonality

A class action requires "questions of law or fact common to the class." Fed. R. Civ. Pro. 23(a)(2). Commonality is satisfied when there is a "common nucleus of operative fact," that is, a "common question which is at the heart of the case." *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir. 1992) (citation omitted). All questions of fact or law need not be identical; rather, the requirement is satisfied as long as the class claims arise out of the same legal or remedial theory.

---

[9] Wexford does not appear to dispute that the numerosity requirement is met. [Filing No. 113.]

[10] The Court notes, however, that even if the Court were to consider how these arguments apply to Plaintiffs' first proposed class definition, the State Defendants provide no evidence to suggest that the number of class members would be reduced from 3,100 (at the low end of the estimate) to less than 40, the threshold identified as being sufficient to render joinder impracticable.

*In re Ready-Mixed Concrete Antitrust Litig.,* 261 F.R.D. 154, 167 (S.D. Ind. 2009). Commonality requires "that the class members have suffered the same injury." *Jamie S.,* 668 F.3d at 497.

Plaintiffs contend that common questions of fact predominate in this action, including, but not limited to: (1) "whether the use of DAA drugs to treat chronic HCV is, with limited exceptions, the medical standard of care; and (2) whether the denial of treatment with DAA drugs to Class members is causing or will cause injury to them… ." [Filing No. 100 at 15.] Plaintiffs argue that common questions of law also predominate, including "whether Defendants' treatment policies or practices for chronic HCV violate the Eighth Amendment, the ADA, or the Rehabilitation Act." [Filing No. 100 at 15.] They argue that their claims "arise from the same practice or course of conduct that gives rise to the claims of other class members and are based on the same legal theory." [Filing No. 100 at 16 (citing *Muro v. Target Corp.,* 580 F.3d 485, 492 (7th Cir. 2009).]

Wexford argues that Plaintiffs have not demonstrated that the commonality requirement is met because Plaintiffs' originally proposed class definition "identifies and recognizes the individualized nature and the variances in the patients, and as such, there is not a common question of law or fact that meets the requirements of Rule 23." [Filing No. 113 at 10.] Wexford also argues generally that where plaintiffs seek to certify a class based on the policies of a defendant, they are required to offer "significant proof" as to the existence of that policy. [Filing No. 113 at 10.] Wexford argues that Plaintiffs have not offered significant proof that Wexford maintains a policy to deny treatment with DAA drugs to class members. [Filing No. 113 at 10.] The State Defendants argue that Plaintiffs' proposed class does not meet the commonality requirement because "whether a particular individual is receiving standard of care treatment for their medical conditions is an individualized inquiry not suited for class relief." [Filing No. 112 at 12.]

In reply, Plaintiffs argue that Defendants mischaracterize the nature of the inquiry in this case as requiring any sort of individualized determinations as to treatments. They contend that the key inquiry is determining the medically accepted standard of care for treating HCV, and whether Defendants have a policy that results in substandard care. [[Filing No. 133 at 9-12](#).]

The Court concludes that several questions of law or fact are common to the class. Among others, these common questions predominate: (1) whether there is a standard of care for treating HCV, and whether that standard includes the use of DAA drugs; (2) whether Plaintiffs are being or have been denied specific treatments, including DAA drugs; and (3) whether any such denial is causing or will cause injury to members of the class. Common questions of law also predominate, including whether Defendants' actions violate the Eighth Amendment, the ADA, or the Rehabilitation Act.

As to Defendants' arguments regarding the necessity of individualized assessments, the Court agrees with Plaintiffs that Defendants mischaracterize the nature of the commonality inquiry as it applies in this case. Defendants in several recent cases have raised similar arguments regarding individualized medical assessments, to no avail. For example, the *Hoffer* court highlighted that the *challenged policy* formed the basis for the common questions of fact and law—not any individual plaintiff's circumstances. The court provided the following assessment:

> …Defendant's misguidance is best illustrated through an example. Consider, for instance, a prison policy that states that every inmate with a broken bone must wait five years before they are treated. Under Defendant's logic, inmates subject to that policy could not initiate a class action to change the policy because each inmate suffers from individualized conditions. That, of course, would be pure applesauce. Although each inmate may be differently situated (e.g., one may have a broken toe, and another a broken rib), they each suffer from the same injury: being subject to the five-year delay.

*[Hoffer](#)*, [2017 WL 5586877](#), at *2 (internal quotation and citations omitted). The *Graham* court concluded the commonality requirement had been met, stating that:

11

> Plaintiffs here are not challenging individual courses of treatment; they are challenging Defendants' official protocols and system-wide practices for Hepatitis C diagnosis and treatment, as they are alleged in the Class Action Complaint. Plaintiffs are not simply disagreeing with a doctor's course of treatment for a particular person. They are attacking TDOC's state-wide policies and procedures applicable to all inmates with Hepatitis C.

2017 WL 1737871, at *4. And the *Postawko* Court concluded that:

> Defendants' argument depends on their contention that inmate medical decisions *always* involve individualized treatment decisions that are, by their very nature, unsuitable for class treatment even when all are attributable to an overarching policy or protocol. The Court rejects this theory, which amounts to a sweeping assertion that…Eighth Amendment claims can never be brought in the form of a class action.

*Postawko*, 2017 WL 3185155, at *7 (emphasis in original). As in *Hoffer*, *Graham*, and *Postawko*, this Court also concludes that common questions of law and fact regarding Defendants' treatment policies exist as to the proposed class.

As to Defendants' argument that Plaintiffs are required to offer "significant proof" of offending policies maintained by Defendants, the Court reminds Defendants that such proof is only required in limited circumstances that are not present here. In cases where putative class members' claims are highly individualized, the Supreme Court has concluded that "an illegal *policy* might provide the 'glue' necessary to litigate otherwise highly individualized claims as a class." *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 498 (7th Cir. 2012) (emphasis in original) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351-55 (2011)). But as the Court concluded above, these claims are not highly individualized, instead applying broadly to the class. And, in any event, Plaintiffs have submitted a variety of documents setting forth, at least in part, Defendants' policies regarding the treatment of HCV.[11] [Filing No. 100-2 through Filing No. 100-

---

[11] Plaintiffs also contend that they have requested the production of the State of Indiana's 2016 Request for Proposal and exhibits to the contract between IDOC and Wexford, which may contain relevant information regarding Wexford and IDOC's HCV policies, but they have not yet been produced. [Filing No. 100 at 8.]

6.] Plaintiffs argue that these documents provide evidence that only a small percentage of inmates are approved or selected for treatment of their chronic HCV infections. [*See, e.g.,* Filing No. 100-3 at 9 ("…selected individuals are offered medication therapy to eradicate the virus."); Filing No. 100-7 at 5 ("…Wexford can state that as of July 22, 2017, eleven (11) inmates were currently receiving DAA treatment.").]

For these reasons, the Court concludes that Plaintiffs have established that questions of law and fact are common to all class members. Therefore the commonality requirement is satisfied.

### 3. Typicality

The typicality requirement requires that the claims of the representative party be typical of the claims of the class. Fed. R. Civ. Pro. 23(a)(3). The commonality and typicality requirements often merge because both "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of the Southwest v. Falcon,* 457 U.S. 147, 158 n. 13 (1982). Although typicality may exist even if there are factual distinctions between the claims of the named plaintiffs and other class members, the requirement "directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *Muro v. Target Corp.,* 580 F.3d 485, 492 (7th Cir. 2009) (citation omitted).

Plaintiffs argue that the named Plaintiffs' claims are typical of the claims or defenses of the class, in that all of the putative plaintiffs claim that Defendants' treatment policy for chronic HCV violates the Eighth Amendment, the ADA, and the Rehabilitation Act. [Filing No. 100 at 16.] Wexford responds that Plaintiffs have not made an evidentiary showing of typicality, but

13

instead "just assume that the existence of some policy would apply equally to the Plaintiffs and the remainder of the class." [Filing No. 113 at 11.] Both Wexford and the State Defendants again argue that the specifics of Plaintiffs' medical histories and diagnoses, as well as those of the class, render these claims highly individualized and inappropriate for class treatment. [Filing No. 112 at 13-14; Filing No. 113 at 11-12.]

As the Court discussed above, Plaintiffs raise claims regarding the policies maintained by IDOC regarding who receives and does not receive treatment for diagnosed HCV. These claims are not dependent on individualized assessments. Plaintiffs' request for injunctive relief, if granted, would benefit the entire class. *See Graham*, 2017 WL 1737871, at *4-5; *Hoffer*, 2017 WL 5586877, at *3; *Postawko*, 2017 WL 3185155, at *11.

The typicality requirement is satisfied.

### 4. Adequacy of Representation

Federal Rule of Civil Procedure 23(a)(4) requires the Court to find that "the representative parties will fairly and adequately protect the interests of the class." The adequacy inquiry is composed of two parts: "the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest[s] of the class members." *Retired Chicago Police Ass'n v. City of Chicago,* 7 F.3d 584, 598 (7th Cir. 1993) (citation and quotation omitted). To adequately represent the class, the representative plaintiff "must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 625 (1997) (citation and quotation omitted).

The State Defendants do not challenge the adequacy of Plaintiffs' counsel. Instead, they argue that Plaintiffs have conceded that they will not fairly and adequately protect the interests of

the class.  [Filing No. 112 at 14.]  The State Defendants contend that the named Plaintiffs have a potential conflict of interest with the putative class, because the named Plaintiffs raise personal injury claims for monetary damages on behalf of themselves, but not on behalf of the class.[12]  [Filing No. 112 at 14.]  Plaintiffs respond that no meaningful differences arise as the result of the named Plaintiffs' additional claims for relief, and that the existence of additional claims does not create any potential or actual conflict.  [Filing No. 133 at 14-15.]

The Court is somewhat perplexed by the State Defendants' undeveloped argument regarding a potential conflict.  The State Defendants state only that "[t]he significant differences in the claims being asserted by the named Plaintiffs versus those asserted by the putative class members establishes the not only possibility of a conflict among the class members, but the likelihood of such a claim.  Very simply, the class representatives and the class members are not marching in lockstep because they are not seeking the same relief."  [Filing No. 112 at 14-14.]  The State Defendants never identify what conflict may arise as a result of these additional claims, or how any conflict might impact the named Plaintiffs' interest in fairly and adequately pursuing the injunctive relief claims.  Moreover, they cite no authority to support the assertion that the existence of non-class claims creates a conflict or impacts the named Plaintiffs' adequacy.

Plaintiffs allege that they are currently incarcerated in IDOC facilities, are infected with chronic HCV, and seek to be offered treatment consistent with the appropriate standard of care.  [Filing No. 39.]  The Court sees no reason to conclude that the named Plaintiffs have, through this stage in the litigation, failed to diligently pursue their injunctive relief claims on behalf of the putative class.  And the named Plaintiffs have attested that their main goal in the litigation is to prevail in their claims for injunctive relief.  [Filing No. 133-1 at 1; Filing No. 133-2 at 1; Filing

---

[12] Wexford does not address the adequacy requirement in its briefing.  [Filing No. 113.]

No. 133-3 at 1.] This is sufficient to establish that the Plaintiffs will fairly and adequately protect the interests of the class.[13]

The Court concludes that the adequacy requirement has been met as to both the Plaintiffs as class representatives and Plaintiffs' counsel. .

### C. Federal Rule of Civil Procedure 23(b)

Where, as here, a proposed class satisfies all the prerequisites of Federal Rule of Civil Procedure 23(a), class certification is appropriate if the class qualifies as one of the types listed under subsection (b) of Rule 23. Plaintiffs argue, and the Court agrees, that the proposed class fits within Fed. R. Civ. P. 23(b)(2), in that, based on the allegations in the First Amended Complaint, "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

The State Defendants oppose this conclusion, generally reiterating their arguments regarding the individualized nature of HCV treatment. [Filing No. 112 at 15.] For the reasons described above, the Court rejects those arguments. Because this action seeks injunctive relief to prevent future allegedly illegal deprivations of civil rights, it is a "prime example[ ]" of a proper class under Rule 23(b)(2). *Amchem,* 521 U.S. at 614 (citation omitted); *see also Doe v. Guardian Life Ins. Co.,* 145 F.R.D. 466, 477 (N.D. Ill. 1992) ("[T]he primary limitation on the use of Rule 23(b)(2) is the requirement that injunctive or declaratory relief be the predominant remedy requested for the class members.").

---

[13] Subsequent developments following the Court's initial Order—namely the settlement of the named Plaintiffs' personal injury claims—further undermine the State Defendants' vague arguments regarding a potential conflict.

## IV.
### CONCLUSION

The Court therefore **GRANTS** Plaintiffs' Motion for Class Certification, [Filing No. 99], modifying the class definition to include: "All current and future prisoners in IDOC custody who have been diagnosed, or will be diagnosed, with chronic HCV."

Moreover, the Court **DESIGNATES** Michael Ray Stafford, Charles Smith, and Douglas Smith as representatives for the class action pursuant to Rule 23. The Court further **DESIGNATES** Mark W. Sniderman and Robert A. Katz as lead class counsel pursuant to Fed. R. Civ. P. 23(g).

Date: 3/2/2018

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

Douglass R. Bitner
KATZ KORIN CUNNINGHAM, P.C.
dbitner@kkclegal.com

Benjamin Myron Lane Jones
INDIANA ATTORNEY GENERAL
benjamin.jones@atg.in.gov

Robert A. Katz
INDIANA UNIVERSITY MCKINNEY SCHOOL OF LAW
rokatz@iu.edu

Carrie L. Kinsella

JACKSON LEWIS P.C.
carrie.kinsella@jacksonlewis.com

Jessica L. Liss
JACKSON LEWIS P.C.
jessica.liss@jacksonlewis.com

William R. Lunsford
MAYNARD COOPER & GALE PC
blunsford@maynardcooper.com

Jarrod Alvin Malone
KATZ KORIN CUNNINGHAM, P.C.
jmalone@kkclegal.com

Jonathan Paul Nagy
INDIANA ATTORNEY GENERAL
jonathan.nagy@atg.in.gov

Aleksandrina Penkova Pratt
INDIANA ATTORNEY GENERAL
aleksandrina.pratt@atg.in.gov

Scott James Preston
JACKSON LEWIS PC (Indianapolis)
Scott.Preston@jacksonlewis.com

Mark W. Sniderman
SNIDERMAN NGUYEN LLP
mark@snlawyers.com

Melissa K. Taft
JACKSON LEWIS PC (Indianapolis)
melissa.taft@jacksonlewis.com