UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MICHAEL RAY STAFFORD, CHARLES SMITH and DOUGLAS SMITH, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Case No. 1:17-cv-289-JMS-MJD |
| ROBERT E. CARTER, JR., et al., | ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANTS' MOTION FOR APPROVAL OF CLASS ACTION SETTLEMENT
AGREEMENT AND COMBINED SUPPORTING BRIEF**

NOW COME the Defendants, WEXFORD OF INDIANA, LLC and PAUL TALBOT, M.D., by their attorney, DOUGLASS R. BITNER of KATZ KORIN CUNNINGHAM, PC, and for their motion for judicial approval of their proposed class action settlement agreement with Plaintiffs, Michael Stafford, Charles Smith and Douglas Smith, states as follows:

**I. INTRODUCTION**

The Plaintiffs, Michael Ray Stafford, Charles Smith and Douglas Smith, on January 27, 2017, filed their initial complaint for declaratory and injunctive relief against the Defendants, alleging their constitutional rights have been violated based upon lack of treatment for their Hepatitis C. [D/N 1] Thereafter, on April 17, 2017, the Plaintiffs filed their amended class action complaint against a number of defendants, including undersigned Defendants, Wexford of Indiana, LLC and Paul Talbot, M.D., again alleging a violation of constitutional rights and federal law based upon the treatment they were receiving for Hepatitis C. [D/MN 39] This first amended

complaint sought monetary damages on behalf of the named Plaintiffs, as well as injunctive relief and monetary damages against the stated defendants and Wexford on behalf of the Class. [D/N 39]

On September 15, 2017, the Plaintiffs filed their motion to certify class, arguing that the named Plaintiffs should be allowed to represent a class of all individuals inside of the IDOC that have been diagnosed with Hepatitis C who have not received direct-acting antivirals. The defense thereafter filed a response and objection.  On March 2, 2018, this Court entered an amended order granting the Plaintiffs' motion for class certification, and defining the class as: "[a]ll current and future prisoners in IDOC custody who have been diagnosed, or will be diagnosed, with chronic HCV." [D/N 154]  The Court also in this order designated Michael Ray Stafford, Charles Smith and Douglas Smith as representatives for the class, and further found that attorneys, Mark Sniderman and Robert Katz were lead counsel for the class pursuant to Federal Rule of Civil Procedure 23(g). [D/N 154]

Following the initiation of this litigation, and months before class certification, the parties began a process of written discovery and depositions. These depositions included significant travel, and the production of thousands of pages of relevant documents, including medical records, policies, emails, and other documents. Moreover, all parties retained expert witnesses to testify on their behalf.

Pursuant to the Court's scheduling order, on January 23, 2018, the parties attended mediation before the Honorable Magistrate Judge Mark J. Densmore, of the United States District Court for the Southern District of Indiana in Indianapolis. Following this mediation, the undersigned Defendants, Wexford of Indiana and Paul Talbot, M.D., were able to reach a preliminary settlement agreement with the named Plaintiffs, for a settlement agreement on behalf of the named Plaintiffs and the proposed Class. [D/N 142] The settlement agreement, however,

was a conditional agreement, requiring that the Plaintiffs' motion for class certification be granted, as the settlement was with the entire Class, and not just the named Plaintiffs. This condition, however, was satisfied on March 2, 2018, when the Court granted the Plaintiffs' motion for class certification. The Defendants now ask this Court to approve the settlement agreement between Wexford of Indiana, Dr. Paul Talbot, the named Plaintiffs and the Class, as required by Rule 23(e).

## II. AUTHORITY

Since the Plaintiffs proposed class action has been certified by the Court, the analysis for settlement is governed by Rule 23(e) of the Federal Rules of Civil Procedure. Rule 23(e) requires Court approval of any settlement that effects the dismissal of a class action. Before such a settlement may be approved, the District Court must determine that a class action settlement is fair, adequate and reasonable, and not a product of collusion. *Reynolds v. Beneficial National Bank*, 288 F.3d. 277, 279 (7th Circuit, 2012) (Internal quotations omitted); Fed.R.Civ.Pro. 23(e).

Federal Courts naturally favor the settlement of class action litigation. *Isby v. Bayh*, 75 F.3d. 1191, 1196 (7th Circuit, 1976). However, Rule 23 requires a thorough evaluation by the Court, and the Seventh Circuit has found that the Court "must exercise the highest degree of vigilance in scrutinizing proposed settlements of class actions." *Synfuel Techs, Inc. v. DHL Express, Inc.*, 463 F.3d. 646, 652 (7th Circuit, 2006).

The Seventh Circuit states as follows with regard to the Court's requirement for approving a proposed class action settlement:

> "District Court review of a class action settlement proposal is a two-step process. The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is 'within the range of possible approval.' This hearing is not a fairness hearing; its purpose, rather, is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a

fairness hearing. If the District Court finds a settlement proposal 'within the range of possible approval,' it then proceeds to the second step in the review process, the fairness hearing. Class members are notified of the proposed settlement and of the fairness hearing, at which they and all interested parties have an opportunity to be heard." *Armstrong v. Board of School Directors of Milwaukee*, 616 F.2d. 305, 314 (7th Circuit, 1980) (Overruled on other grounds by *Felzen v. Andreas*, 134 F.3d. 873 (7th Circuit, 1998). (Internal citation and footnote omitted).

In deciding whether to approve a settlement, courts must consider: (1) the strength of Plaintiffs' case compared to the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement among affected parties; (4) the opinion of competent counsel; and (5) the stage of the proceeding and the amount of discovery completed. *Synfuel Techs.*, 463 F.3d. 653. During this analysis, the courts do not "focus on individual components of the settlement, but rather view them in their entirety and evaluating their fairness." *Isby,* 75 F.3d., 1199. When analyzing whether a proposed settlement is fair, reasonable and adequate, Courts "should refrain from resolving the merits of the controversy or making a precise determination of the parties' respective legal rights." *E.E.O.C. v. Hiram Walker & Sons, Inc.,* 768 F.2d. 884, 889 (7th Circuit, 1985). Additionally, a Court "must not forget that it is reviewing a settlement proposal rather than ordering a remedy in a litigated case", (*Armstrong,* 616 F.2d. at 314-315), keeping in mind that the presence of more creative or traditional alternatives does not preclude settlement approval. *Kuhl v. Thoroughbred Tech & Telecommunications, Inc.,* 309 F.3d. 978, 987 (7th Circuit, 2002). The most important settlement approval factor is "the strength of Plaintiffs' case on the merits balanced against the amount offered in the settlement." *Synfuel Techs,* 463F.3d., 653. As part of this analysis, the Court should "estimate the range of possible outcomes and ascribe a probability to each point on the range." *Synfuel Techs,* 463 F.3d., 653. Further, because the 'essence of settlement is compromise', the

4

court should not reject a settlement 'solely because it does not provide a complete victory to the Plaintiffs.'" *Isby*, 75 F.3d. at 1200. Parties to a settlement benefit by immediately resolving the litigation and receiving "some measure of vindication for [their] positions while foregoing the opportunity to achieve an unmitigated victory. Thus, the parties to a settlement will not be heard to complain that the relief afforded is substantially less than what they would have received from a successful resolution after trial." *Hiram Walker*, 768 F.2d. at 889. (Internal citations omitted and emphases in original).

### III. TERMS OF SETTLEMENT

As discussed above, at the mediation before the Honorable Mark Dinsmore, the undersigned Defendants were able to reach a settlement agreement with the Plaintiffs for a discharge of the named Plaintiffs' claims against the Defendants, as well as the claims brought by the Class. The settlement agreement, however, contains a strict confidentiality provision, and as such, the terms are not disclosed in the body of this motion. However, upon filing, undersigned counsel will provide a copy of the signed settlement release to the Court and other parties via email for inspection.

Generally, the Defendants reached a monetary settlement with the named Plaintiffs for release of their claims, and reached a non-monetary settlement agreement with the proposed Class, which requires Wexford's compliance with any new policies for the treatment of HCV from the Indiana Department of Correction, and requires further participation from Wexford and Dr. Talbot in the discovery and ongoing motion practice between the certified Class and the State of Indiana for the remaining claims in this matter. This includes the requirement that Wexford provide witnesses to testify at hearings and trial, furnish witnesses for depositions, cooperating in good faith with future discovery requests, and participate as needed in the ongoing litigation.

The settlement agreement provides financial relief to the named Plaintiffs for their damages claim, and also provides relief to the Class, by requiring Wexford's compliance with any new or alternative policy (created and funded by IDOC) for the treatment of all patients with HCV, and providing further participation through discovery and testimony as is reasonably needed during the existence of the ongoing litigation. Settlement also allows the Plaintiffs to avoid the expense of further prosecution of these claims against Wexford.  In exchange, Wexford receives a release for all claims as brought by the named Plaintiffs and the Class related to the treatment of Hepatitis C.

## IV. ARGUMENT

At this time, the Defendants are seeking preliminary approval from this Court of the Agreement reached between the undersigned Defendants and the Plaintiffs. As discussed and laid out below, the Defendants are seeking preliminary approval from this Court, specifically a finding that the proposed terms of the settlement satisfy all of the elements of Federal Rule Civil Procedure 23(a) and 23(b)(3).

**A. The Court Should Grant Preliminary Approval of the Class Settlement:**

The settlement agreement reached amongst the parties satisfies all the requirements of Rule 23, and therefore, should receive preliminary approval from this Court. In light of the evidence presented throughout discovery in this matter, it is clear that this settlement amongst the named Plaintiffs and the Class is a fair, adequate, and reasonable outcome for all parties, and satisfies all of the elements as discussed of the Seventh Circuit in *Synfuel Techs.*

**(1) Strength of Plaintiffs' case compared to terms of post settlement:**

The proposed settlement agreement reached amongst the parties is fair when comparing the strength of Plaintiffs' case to the evidence in favor of Defendants. First and foremost, the Plaintiffs' allegations against Defendants, Wexford and Paul Talbot, are deliberate indifference claims, based upon allegations of failure to provide direct acting antiviral treatment. The Plaintiffs' claims are for violations of the Eighth Amendment, as well as the Americans With Disabilities Act. As the Court is aware, the deliberate indifference standard is a high burden. To prevail on Eighth Amendment deliberate indifference medical claim, Plaintiffs must demonstrate two elements: (1) they suffered from an objectively serious medical condition; and (2) that the Defendants knew about the Plaintiffs' condition and the substantial risk of harm at post, but disregarded that risk. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Since Wexford is a corporation, and not an individual defendant, §1983 liability for deliberate indifference exists only when execution of a policy or custom is the cause of the constitutional depravation. *Calhoun v. Ramsey*, 408 F.3d. 375, 379 (7th Circuit 2005). This policy must be the "moving force behind the depravation of [their] constitutional rights." *Johnson v. Cooke County*, 526 F. Appx. 692, 695 (7th Circuit 2013).

The discovery in this case has been as follow: the Plaintiffs allege that they have all been diagnosed with Hepatitis C and have not yet received direct acting antiviral treatment, which in their opinion, constitutes the standard of care for the treatment of Hepatitis C. Defendant Wexford responds that they are simply following the policies and procedures of the Indiana Department of Correction. Indiana Health Directive 3.09 provides guidance to their medical vendor (Wexford), and Wexford is contractually obligated to comply with this policy. Moreover, the contractual terms

between Wexford and IDOC specifically exempted the payment of medications for Hepatitis C, leaving the decisions about funding and policies to the Department of Correction, not Wexford.

The Plaintiffs retained two expert witnesses. Both of these expert witnesses agreed that the standard of care requires direct acting antivirals. Defendant Wexford put forth Dr. Neil Fisher, who testified that the policy of the Indiana Department of Correction is reasonable, and consistent with national standards, and the policies of the Federal Bureau of Prisons. Defendant Wexford also retained the opinion of Dr. Bruce Boyton, Medical Director for the State of New Mexico, as well as an infectious disease specialist, Dr. Pritesh Patel, both of whom disclosed opinions indicating that the policy and procedures of the Indiana Department of Corrections for the treatment of Hepatitis C was reasonable and consistent with national standards and the standard of care.

In light of the above evidence, the agreement amongst the parties was reasonable. The named Plaintiffs were seeking damages based upon an alleged delay in receiving Hepatitis C treatment, specifically direct acting antivirals. The testimony was clear that they have been diagnosed with Hepatitis C, but the medical records were also clear that the Plaintiffs' condition is stable, and that the Plaintiffs currently do not have any confirmed cirrhosis of the liver, and that their conditions are largely asymptomatic. With regard to the claims brought by the Class, it is also clear from the evidence that their complaints regarding the policies and practices of Wexford were misplaced. Instead, Wexford did not create the policies in effect in Indiana, and instead, these policies were created by the Indiana Department of Correction.

There is no evidence that Wexford created any unconstitutional policy or practice in Indiana. Further, to the extent there are concerns regarding IDOC's treatment policies, there are extensive expert witnesses and documentation to prove that this policy (3.09) was consistent with

the applicable standard of care, and also consistent with the overwhelming majority of other state prison systems.

The agreement reached between the Class and the Defendants is appropriate. The certified Class still has remaining claims against the Department of Correction based upon their treatment policies for Hepatitis C. While the agreement does not provide any monetary relief to the certified Class, it does require certain actions from Defendant Wexford. Wexford has agreed to comply with any policy change of the Indiana Department of Correction, so long as that policy change is funded by the state. As such, to the extent the certified Class is seeking Hepatitis C treatment, Wexford agrees to comply and provide treatment pursuant to any policy created and funded by the state. Further, Wexford is providing the Plaintiffs specific language in the release that requires certain levels of participation in the ongoing litigation between the Plaintiffs and the State of Indiana. Given the policy at issue was not created by Wexford, and was largely exempt from the contract between Wexford and the IDOC, this settlement agreement reaches a fair compromise between the parties. It allows both parties to avoid increased cost of defense, but also recognizes that the policies at issue were not created by Wexford. As such, this agreement is consistent with the strength of the Plaintiffs' case.

**(2). Likely complexity, length and expense of continued litigation:**

There will be continued expenses for Wexford and the Plaintiffs, regardless of the outcome of this settlement agreement. The Plaintiffs are still moving forward with the claim against the State of Indiana. Moreover, Wexford has agreed to participate in ongoing discovery and offer witnesses to testify as needed by both parties. However, the settlement does allow for a significant decrease in the expense to all parties. The Plaintiff will no longer be required to take depositions of the Defendants' expert witnesses. The Plaintiffs will no longer be required to present evidence

9

to prove a case against the Defendants. There is also significant savings to the Defendants, as the Defendants will no longer be required to invest significant resources in the ongoing defense of this matter.

The settlement also is efficient for the Court, as it decreases the number of parties, thereby decreasing the number of witnesses, depositions, pre-trial motions, and the required length of any ongoing hearings or trial.

### (3). The amount of opposition to settlement among affected parties:

At this time, there has been no opposition amongst the Class. To Defendants' knowledge, the Class Members beyond the named Plaintiffs have not been notified of the existence of this settlement agreement.

### (4). The opinion of competent counsel:

Both Plaintiffs' retained counsel, as well as defense counsel, agreed to the language of this settlement agreement. Both Mark Sniderman, as well as undersigned counsel, signed the settlement agreement, as did the three named Plaintiffs. Further, the settlement agreement was agreed to during mediation with the Honorable Mark Dinsmore.

### (5). The stage of the proceedings and the amount of discovery completed:

This is an appropriate stage of a litigation for the settlement agreement. Discovery has been initiated, but was not completed. The parties were moving into a time of extensive expert discovery, which would include significant travel, as one of Defendants' retained witnesses was located in New Mexico, and the other in Chicago. Moreover, the settlement occurred before the

completion of dispositive motions. Given the complexity and amount of discovery, the drafting and briefing of dispositive motions would have been a significant undertaking for all parties.

## CONCLUSION

For all the reasons set forth above, the Defendants hereby request that this Court grant preliminary approval of the settlement agreement reached between Defendants, Wexford of Indiana and Paul Talbot, M.D., and the three named Plaintiffs and the certified Class. The settlement agreement satisfies the requirements of Rule 23, and meets the requirements as established by the Seventh Circuit. This is a fair compromise that has been agreed to and signed by the attorneys of record and the three named Plaintiffs on behalf of the Class. It represents a fair and reasonable resolution of the litigation for the Defendants and the Plaintiffs, and allows all parties to avoid additional future expenses from ongoing litigation. For these reasons, the Defendants respectfully request this Court preliminary approve their settlement agreement.

Respectfully submitted,

KATZ KORIN CUNNINGHAM, PC


/s/ *Douglass R. Bitner*

Douglass R. Bitner
KATZ KORIN CUNNINGHAM, P.C.
The Emelie Building
334 N. Senate Avenue
Indianapolis, IN 46204
Office: (317) 464-1100
Direct: (317) 396-2565
Fax: (317) 464-1111
Email: *dbitner@kkclegal.com*
*Attorney for Wexford of Indiana, LLC and Paul Talbot, M.D.*

11

## CERTIFICATE OF SERVICE

I hereby certify that on **March 23, 2018**, a copy of the foregoing was filed electronically.

Notice of this filing will be sent to the following party(ies) by operation of the Court's electronic

filing system. The party(ies) may access this filing through the Court's system:

| | |
|---|---|
| Mark W. Sniderman<br>SNIDERMAN NGUYEN, LLP<br>*mark@snlawyers.com* | Carrie L. Kinsella<br>JACKSON LEWIS, P.C.<br>*carrie.kinsella@jacksonlewis.com* |
| Robert A. Katz<br>IU MCKINNEY SCHOOL OF LAW<br>*rokatz@iu.edu* | Jessica L. Liss<br>JACKSON LEWIS, P.C.<br>*jessica.liss@jacksonlewis.com* |
| Aleksandrina P. Pratt<br>INDIANA ATTORNEY GENERAL<br>*aleksandrina.pratt@atg.in.gov* | Melissa K. Taft<br>JACKSON LEWIS, P.C.<br>*melissa.taft@jacksonlewis.com* |
| Amanda Elizabeth Fiorini<br>INDIANA ATTORNEY GENERAL<br>*Amanda.Fiorini@atg.in.gov* | Scott James Preston<br>JACKSON LEWIS, P.C.<br>*scott.preston@jacksonlewis.com* |
| Benjamin M. Jones<br>INDIANA ATTORNEY GENERAL<br>*benjamin.jones@atg.in.gov* | William R. Lunsford<br>MAYNARD COOPER & GALE, PC<br>*blunsford@maynardcooper.com* |
| Jonathan P. Nagy<br>INDIANA ATTORNEY GENERAL<br>*jonathan.nagy@atg.in.gov* | Jarrod A. Malone<br>KATZ KORIN CUNNINGHAM, PC<br>*jmalone@kkclegal.com* |
| Kelly S. Thompson<br>INDIANA ATTORNEY GENERAL<br>*kelly.thompson@atg.in.gov* | Gregory P. Gadson<br>*gregory_gadson@yahoo.com* |

/s/ *Douglass R. Bitner*

4840-7195-9647, v. 2