IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MICHAEL RAY STAFFORD, CHARLES SMITH and DOUGLAS SMITH, individually, and on behalf of those similarly situated,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>ROBERT E. CARTER, JR., et al.,<br><br>　　　　Defendants. | Case No. 1:17-cv-289-JMS-MJD |

**PLAINTIFFS' REPLY IN SUPPORT OF PERMANENT INJUNCTION**

Plaintiffs have met the criteria for a permanent injunction to issue. Defendants do not show otherwise, notwithstanding their requests to categorically delay or deny treatment to some Plaintiffs.

**I.   ARGUMENT**

Plaintiffs argued that all of the factors supporting the issuance of an injunction were met, such that Defendants should be ordered to treat their chronic HCV in accordance with the medical standard of care and the Eighth Amendment. [Filing No. 219.] In their response brief [Filing No. 224], Defendants do not contest that: (a) Plaintiffs have prevailed upon their Eighth Amendment claim; (b) Plaintiffs have suffered irreparable injury as a result of Defendants' deliberate indifference to their serious medical needs; and (c) monetary damages and other legal remedies are inadequate to compensate Plaintiffs for their injury at Defendants' hands. At the same time, Defendants appear to argue that: (d) an injunction would cause them more hardship than what Plaintiffs will endure absent an injunction; and (e) an injunction would not serve the public interest.

More specifically, Defendants argue that an injunction should not issue, or that the scope of any such injunction be severely limited, on two main grounds. First, Defendants allege that "fiscal realities" bar them from meeting their constitutional obligations towards Plaintiffs until June 30, 2023. [Filing No. 224 at 3, 4, 9, 11.] Plaintiffs' response is three-fold: (1) Defendants' fiscal situation reflects their own delay, inaction and passivity in seeking funding, for which Plaintiffs should not be punished. (2) Moving forward, there are at least two funding avenues that Defendants could pursue: asking the Governor to convene a special session of the General Assembly, and exploring alternative approaches for providing DAAs. Defendants appear not to have explored either. (3) As a legal matter, Defendants cannot invoke insufficient funds to escape an injunction to comply with their adjudicated constitutional obligations.

Second, Defendants propose to deny treatment altogether to some Plaintiffs "because of the substantial risk of non-completion of treatment…" [Filing No. 224 at 9.] Defendants' request must be denied because, *inter alia*, they offer no evidence of such risk, whereas this Court has found that such risk is minimal.

A. Defendants' Alleged Lack of Sufficient Funds is the Result of Their Own Inaction

Defendants claim that they "have no ability to treat all remaining offenders unless funding is secured from the Indiana General Assembly during the 2021 legislative session." [*Id.* at 9.] But the Indiana Constitution expressly authorizes the Governor to call a special session of the General Assembly "if, in the opinion of the Governor, the public welfare shall require it…" Indiana Constitution, Article 4, Section 9 ("if, in the opinion of the Governor, the public welfare shall require it, he may, at any time by proclamation, call a special session."). *See, e.g., Holt v. Sarver*, 309 F. Supp. 362, 385 (E.D. Ark. 1970), *aff'd and remanded*, 442 F.2d 304 (8th Cir. 1971)

(in an opinion addressing constitutional violations in state prison system "notice may be taken of the fact that the Governor of Arkansas has issued his call for the Legislature to meet in special session… [and that l]egislation for the benefit of the Penitentiary is included… on the agenda"). Defendants do not acknowledge this potential route, nor do they explain why they have not or will not pursue it.

Defendants' fiscal situation is the result of their own inaction.  Defendants have known for some time that the HCV Guidance Panel, whose guidance is the standard of care, recommends treatment with DAAs for all patients with chronic HCV infection, except those with short life expectancies that cannot be remediated by treatment, by transplantation, or by other directed therapy.  [Filing No. 186 at 17 (citations omitted).] *Accord Hoffer v. Jones*, 290 F. Supp. 3d 1292, 1296 (N.D. Fla. 2017) ("the present-day standard of care is to treat chronic-HCV patients with DAAs as long as there are no contraindications or exceptional circumstances").  Dispelling all doubt, this Court's Order dated September 13, 2018, held that "Defendants' deliberate refusal to provide that treatment constitutes a violation of the Eighth Amendment." [Filing No. 186 at 43.]

Defendants have also known for some time that the Indiana General Assembly would commence its 2019 session on January 3, 2019.[1]  Yet Defendants apparently did not seek an appropriation from the General Assembly during the 2019 session, even though that session did not commence until nearly *four months* after this Court issued its Order.  This is so even though Defendants knew, as they claim, that an appropriation was necessary in order to treat Plaintiffs in accordance with the standard of care.  Having foregone the opportunity to correct their constitutional violations in a timely fashion, Defendants should not be permitted to invoke their own inaction to escape their constitutional responsibilities.

---

[1] National Conference of State Legislatures, *2019 State Legislative Session Calendar* http://www.ncsl.org/research/about-state-legislatures/2019-state-legislative-session-calendar.aspx, last visited April 14, 2019.

Moving forward, Defendants could ask the Governor, a key stakeholder, to convene a special session, as noted above. [*See, e.g.,* "Public health crises and pharmaceutical interventions: improving access while ensuring fiscal sustainability," at 3, National Governors Association, https://www.nga.org/wp-content/uploads/2018/08/Public-Health-Crises-and-Pharmaceutical-Interventions.pdf, last visited April 15, 2019 (hereinafter "NGA," attached as Exhibit 1) (discussing strategies for state policymakers "to address public health crises by increasing access to pharmaceuticals while ensuring fiscal sustainability of public programs").]

Defendants could also explore alternative approaches for providing DAAs, such as a subscription-based model. But their fiscal passivity is further shown by their apparent failure to explore this model, notwithstanding the Court's invitation to do so. [Filing No. 209 at 1 ("the Court submits for the parties' review information regarding the state of Louisiana's exploration of a subscription-based model for the provision of DAAs.").]

Under a subscription-based model the state "enter[s] into an agreement with a pharmaceutical manufacturer in which the state pays a negotiated price for a certain volume of a drug over a specified period of time to increase access in a way that recognizes state budget constraints." [NGA, Exh. 1, at 6, 21-23; *see also* Mark R. Trusheim, et al., "Alternative State-Level Financing for Hepatitis C Treatment-The "Netflix Model,"" JAMA, Nov. 20, 2018, (attached as Exhibit 2).] Louisiana recently entered into such an agreement with Gilead Sciences, a pharmaceutical company, under which the state will pay an annual fee ($35 million) to the company for unlimited access to its DAAs for five years, instead of paying per patient (which would cost approximately $760 million). [*See* "Gilead enters subscription-based contract with Louisiana for hepatitis C drugs," Associated Press, Modern Healthcare, Mar. 27, 2019, at p. 2 (attached as Exhibit 3).] During this period, "Louisiana will treat as many Medicaid patients

4

and prisoners as it can, rather than pay a per-patient treatment price that is so costly it has severely limited access." [*Id.*]

Lastly, Defendants could explore steps that the Governor could take to expand access to DAAs that do not require action or approval by the General Assembly. [*See* NGA, Exh. 1, pp. 5-7.]

### B. Defendants Cannot Escape Their Constitutional Responsibilities by Pleading Insufficient Funds

Defendants seek to avoid an injunction to compel timely compliance with their constitutional duty by pleading insufficient funds. [Filing No. 224 at 9 (lack of funds prevents Defendants from treating all Plaintiffs until 2023).] They implicitly claim that compliance in the face of fiscal constraints would burden Defendants and that such a burden would outweigh the Plaintiffs' continued suffering due to untreated chronic HCV.

Other courts have responded to such a plea of insufficient funds as follows:

> a state is not required to operate a penitentiary system. If, however, a state chooses to operate a prison system, then each facility must be operated in a manner consistent with the constitution. Thus, when a court is considering injunctive relief against the operation of an unconstitutionally cruel and unusual prison system, *it should issue the injunction without regard to legislative financing*. By such an injunction, however, the court does not order the prison to be operated; it merely enjoins its being operated in an unconstitutional manner. The state may undertake to operate its prison system in countenance with the constitution or it may choose to close it down. That choice is the state's and it is not dictated by the court.

*Williams v. Bennett*, 689 F.2d 1370, 1388 (11th Cir. 1982) (emphasis added). *Accord Harris v. Thigpen*, 941 F.2d 1495, 1509 (11th Cir 1991) ("We are aware that systemic deficiencies in medical care may be related to a lack of funds allocated to prisons by the state legislature. Such a lack, however, will not excuse the failure of correctional systems to maintain a certain minimum level of medical service necessary to avoid the imposition of cruel and unusual punishment."); *Smith v. Sullivan*, 611 F.2d 1039, 1043-44 (5th Cir. 1980) (order requiring county to remedy

unlawful jail conditions is not defeated by county's claim that compliance "would require county to "violate its duty to stay within spending limits imposed by state law"; "It is well established that inadequate funding will not excuse the perpetuation of unconstitutional conditions of confinement"); *Battle v. Anderson*, 564 F.2d 388, 396 (10th Cir. 1977) (affirming order requiring state to remedy prison conditions notwithstanding financial constraints; "the lack of financing [is not] a defense to a failure to provide minimum constitutional standards"); *Id.* ("If the State of Oklahoma wishes to hold the inmates in institutions, it must provide the funds to maintain the inmates in a constitutionally permissible manner"); *Peralta v. Dillard*, 744 F.3d 1076, 1083 (9th Cir. 2014) (in a § 1983 action alleging prison officials' deliberate indifference to serious medical needs, "[l]ack of resources is not a defense to a claim for prospective relief because prison officials may be compelled to expand the pool of existing resources in order to remedy continuing Eighth Amendment violations."); and *Holt*, 309 F. Supp. at 383 ("the obligation of the Respondents to eliminate existing unconstitutionalities does not depend upon what the Legislature may do, or upon what the Governor may do, or, indeed, upon what Respondents may actually be able to accomplish.  If Arkansas is going to operate a Penitentiary System, it is going to have to be a system that is countenanced by the Constitution of the United States.").  *See also Watson v. City of Memphis,* 373 U.S. 526, 537 (1963) (rejecting argument that city couldn't desegregate parks because of budgetary concerns: "vindication of conceded constitutional rights cannot be made dependent upon any theory that it is less expensive to deny than to afford them").

So it is here:  respectfully, this Court should issue an order "without regard to legislative financing," enjoining the Defendants' prisons from "being operated in an unconstitutional manner."

In a variation of the insufficient funds defense, Defendants assert that their "ability to treat all offenders, regardless of their illness or injury, will be compromised if Defendants are

ordered to immediately treat all offenders with HCV." [Filing No. 224 at 5.] The Florida Department of Corrections (FDC) made this precise claim in *Hoffer*. *Hoffer*, 290 F. Supp. 3d at 1304. ("Defendant argues that any funds required to be spent by FDC are funds taken from providing care to other inmates"). The *Hoffer* court properly rejected it. *Hoffer*, 290 F. Supp. 3d at 1304 ("But that is no excuse. FDC cannot use its constitutional duty to treat a certain group of inmates as a reason not to treat a different group") (citing, inter alia, *Williams*, 689 F.2d at 1388 ("If ... a state chooses to operate a prison system, then each facility must be operated in a manner consistent with the constitution")).

      C.      Defendants' Alleged Concern Over "the Substantial Risk of Non-completion of Treatment" Does Not Justify the Categorical Denial of Treatment to Some Plaintiffs

Defendants propose to deny treatment altogether to certain classes of Plaintiffs "because of the substantial risk of non-completion of treatment." [Filing No. 224 at 9.] This proposal should be rejected for several reasons. First, Defendants cite no evidence to establish *any* "risk of non-completion of treatment," much less a "significant" one. Second, Defendants' alleged fears over "non-completion" are refuted by the undisputed evidence that treatment completion is *not* a significant problem. [Filing No. 186 at 26 ("Plaintiffs present undisputed evidence... that inmates with HCV can be very effectively identified and treated while incarcerated, because they are in a controlled environment and under observation.").]

Lastly, Defendants' proffered solution to the non-problem of non-completion is confusing and self-defeating. According to Defendants, it takes approximately 20 weeks to complete treatment. [Filing No. 224 at 9.] Defendants propose to deny treatment to Plaintiffs who have less than 32 weeks remaining on their sentences -- including those who could complete treatment prior to release, *i.e.*, those with at least 20 weeks until release. [*Id.*] Defendants also propose to deny treatment to newly incarcerated Plaintiffs whose sentences are less than 60 weeks -- again,

including those who could complete treatment prior to release. [Filing No. 224 at 9-10.] Defendants do not explain how patients who have completed treatment are at risk of not completing treatment. By definition, patients who have completed treatment present a zero risk of non-completion. Nor do Defendants explain how denying treatment to patients who *could* complete treatment would reduce the risk of non-completion. The opposite is true: patients who do not start treatment are guaranteed not to complete it.

## II.    CONCLUSION

All of the factors supporting the issuance of an injunction have been met. For the foregoing reasons, and for all those identified in Plaintiffs' Brief in Support of Motion for Permanent Injunction, Plaintiffs' motion should be granted, and Defendants should be ordered to provide all class members access to DAAs.

Respectfully submitted,

*s/ Mark W. Sniderman*
Mark W. Sniderman
FINDLING PARK CONYERS
 WOODY & SNIDERMAN, PC
151 N. Delaware St., Ste. 151
Indianapolis, IN  46204
(317) 231-1100 T
(317) 231-1106 F
msniderman@findlingpark.com

*s/ Robert Katz*
Robert Katz
INDIANA UNIVERSITY ROBERT H.
 MCKINNEY SCHOOL OF LAW
530 West New York Street
Indianapolis, IN  46202
(317) 278-4791 T

*Attorneys for Named Plaintiffs Michael Ray Stafford, Charles Smith
and Douglas Smith, and Class Members*

8