IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

MICHAEL RAY STAFFORD,              )
CHARLES SMITH and DOUGLAS SMITH,   )
individually, and on behalf of those      )
similarly situated,                     )
                                    )
       Plaintiffs,               )
                                    )
       v.                       )       Case No. 1:17-cv-289-JMS-MJD
                                    )
ROBERT E. CARTER, JR., et al.,       )
                                    )
       Defendants.              )

**Third Stipulation to Enter into Settlement Agreement
Pursuant to 18 U.S. Code § 3626(c)(2)
Following Notice to the Class and Fairness Hearing**

The parties, in person and by their counsel, stipulate and agree as follows:

**I.    History of the case.**

1. Hepatitis C is an infectious disease that affects the liver and other parts of the body. It is generally transmitted through blood. There are two stages of HCV: acute and chronic. Approximately 80% of people with acute HCV will develop chronic HCV after six months, and the other 20% will self-resolve. Once a person develops chronic HCV, it will not self-resolve, and the person will be infected for life without treatment. This lawsuit deals with those who have chronic HCV.

2. In 2017, several prisoners of Indiana Department of Correction ("IDOC") facilities who suffer from chronic Hepatitis C infection ("HCV") filed the operative complaint in this action. (ECF 39.) Plaintiffs sought damages and declaratory and injunctive relief from Wexford of Indiana, LLC, Corizon

1

Health, Inc., Corizon, LLC[1], treating physicians at Pendleton Correctional

Facility[2], and three IDOC officials: IDOC's Commissioner Robert E. Carter,

Jr., IDOC's Chief Medical Officer Dr. Kristen Dauss[3], and IDOC's Director

of Health Care Services, Monica Gipson, R.N.[4] (ECF 39.)

3.   Plaintiffs' suit alleged that the medical treatment that Plaintiffs received

for their HCV while incarcerated violated the Eighth Amendment to the

United States Constitution, the Americans with Disabilities Act, and the

Rehabilitation Act. (ECF 39.) Plaintiffs' suit specified that the medical

standard of care required that HCV-infected prisoners be treated with

certain Direct-Acting Antiviral oral medications ("DAAs") approved by the

U.S. Food and Drug Administration. (ECF 39.)

4.   At all times, State Defendants have denied, and continue to deny, Plaintiffs'

allegations. (ECF 74; ECF 79.)

5.   On March 2, 2018, the Court certified this case as a class action, and at that

time defined the class as:

---

[1] Corizon Health, Inc. and Corizon, LLC were removed from this class action for declaratory and injunctive relief because those Defendants are no longer the medical contractor with the IDOC. (ECF 111.) These Defendants were subsequently dismissed from the suit with prejudice through a joint stipulation of dismissal. (ECF 157.)

[2] The treating physicians were subsequently dismissed from the suit with prejudice through a joint stipulation of dismissal. (ECF 157.)

[3] Dr. Dauss has been substituted as a Defendant in place of former Chief Medical Officer Dr. VanNess, who was substituted as a Defendant in place of former Chief Medical Officer Dr. Michael Mitcheff.

[4] Ms. Gipson was dismissed from this case by the Court in its order of September 13, 2018. (ECF 186)

"All current and future prisoners in IDOC custody who have been diagnosed, or will be diagnosed, with chronic HCV." (ECF 154.)

6. The class is represented by three inmates: Michael Ray Stafford, Charles Smith, and Douglas Smith. (ECF 154.)

7. On April 13, 2018, Plaintiffs moved for summary judgment on their Eighth Amendment claim, and Defendants moved for cross-summary judgment on all claims. (ECF 167; ECF 173).

8. On September 13, 2018, the Court granted Plaintiffs' motion for summary judgment as to Defendants' liability on the Eighth Amendment claim. (ECF 186.) The Court specifically found that IDOC's failure to provide DAAs to all offenders with HCV constituted a violation of the Eighth Amendment. (ECF 186.) The Court modified the class definition to: "all current and future prisoners in IDOC custody who have been diagnosed, or will be diagnosed, with chronic HCV, and for whom treatment with DAA medication is not medically contraindicated" and decertified the class as to the ADA and Rehabilitation Act claims only. (ECF 186.) Finally, the Court denied Defendants' cross-motion for summary judgment. (ECF 186.)

9. Subsequent to settlement negotiations between the parties, the Court granted Plaintiffs' motion to convert the trial set in this matter to a remedy hearing and ordered briefing on the remedy issue. (ECF 205.) The parties stipulated that the following issues would be resolved at a remedy hearing:

   i. Whether the Court should issue an injunction;

ii.  If the Court does issue an injunction, whether it should mandate treatment with DAAs for class members with HCV;

iii.  If the Court does mandate treatment with DAAs for class members with HCV, should treatment be universal or should treatment be cut off at a certain level of disease progression; and if the latter, where the cutoff should be; and

iv.  If the Court does mandate treatment with DAAs, what is a realistic timeline for implementation of such a mandate? (ECF 214.)

10. On March 26, 2019, Plaintiffs filed a motion for a permanent injunction, which would require Defendants to provide all class members access to DAAs. (ECF 218.) Prior to State Defendants filing their response to Plaintiffs' motion for permanent injunction, the parties stipulated to the dismissal of Wexford of Indiana, LLC, from the suit. (ECF 222.) On April 9, 2019, State Defendants filed their pre-hearing brief and response to Plaintiff's motion for a permanent injunction. (ECF 224.)

11. A remedy hearing was scheduled for April 29, 2019; however, prior to the hearing, the parties filed a joint motion for continuance and for the matter to be referred to a magistrate for a settlement conference. (ECF 230.)

12. Since the Court's Entry on September 13, 2018 the parties, as set out in more detail below, have been working to address concerns expressed by the Court and to modify the conditions of confinement for the class.

13. Because Plaintiffs have sought relief under 42 U.S.C. § 1983 for violations of the United States Constitution and federal law, parts of this litigation are subject to the Prison Litigation Reform Act, 18 U.S.C. § 3626, et seq. This Act imposes certain requirements on judicially sanctioned agreements made in litigation such as this, but provides that the parties may enter into private agreements, which are exempted from the requirements of the Act. 18 U.S.C. § 3626(c). However, such agreements are not subject to enforcement under federal law other than through potential reinstatement of the proceedings, although they are enforceable under state law as breaches of contract. *Id.*

14. Because this case is a certified class action the Court must determine, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, that this Private Settlement Agreement ("Agreement") is a fair, reasonable, and adequate resolution of this matter. The Court cannot ascertain this until after reasonable notice is given to the class. Accordingly, even though this Private Settlement Agreement has been agreed to by State Defendants and all named Plaintiffs, it will not be effective until after notice is given to the class and the Court conducts the hearing required by Rule 23(e). State Defendants and the named Plaintiffs specifically agree that their approval of this Agreement is contingent on the Court finding that the Agreement is fair, reasonable, and adequate, and in the event that the Court does not find that the Agreement is fair, reasonable, and adequate, this Agreement

will immediately be deemed null and void. Plaintiffs will file, along with this Agreement, a motion seeking approval of the form and manner of notice to the class of this Agreement.

15. The Indiana Department of Correction continues to deny that it has at any time violated the Eighth Amendment rights of the class and denies the various claims made by plaintiffs to support their Eighth Amendment argument. However, the parties are desirous of attempting to reach a settlement of this matter and therefore they enter into this Stipulation. Defendants' entry into this Agreement is not an admission of any kind and imposes no liability on defendant or any of its agents, employees, officers or other persons for any violation of law, constitutional or otherwise.

16. Accordingly, to the extent that the parties agree to the terms and conditions as set forth below, this is deemed to be a "private settlement agreement" as defined under the Prison Litigation Reform Act, 18 U.S. Code § 3626(c)(2).

17. This Agreement is supported by good and valuable consideration. This includes, but is not limited to, the following: Plaintiffs agree that they will not seek a final judgment in this cause, unless this case is reinstated as set forth below.  State Defendants agree that they will not seek to appeal this Court's Entry of September 13, 2018 (ECF 186), whether as an interlocutory matter or after final judgment, and will not challenge any of the Court's other rulings in this cause, unless this case is reinstated as set forth below.

II.   **Definitions.**

1.   "Agreement" shall mean this private settlement agreement between the

parties, as set forth below.

2.   "Effective Date" shall mean the date upon which the Court approves this

private settlement agreement as a fair, reasonable, and adequate

resolution of this matter following notice to the class and a hearing

conducted under Federal Rule of Civil Procedure 23(e).

3.   "HCSD" shall mean Indiana Department of Correction Health Care

Services Directive 3.09a, as written in Exhibit A to this Agreement, which

contains the policy and procedures for the treatment of prisoners infected

with chronic hepatitis C.

4.   "HCV" shall mean chronic Hepatitis C viral infection.

5.   "IDOC" shall mean the Indiana Department of Correction.

6.   "State Defendants" shall mean the Commissioner of the Indiana

Department of Correction and the Chief Medical Officer of the Indiana

Department of Correction, both in their official capacity.

III.   **Class Definition and Size**.

1.   In the Court's summary judgment order of September 13, 2018, (ECF 186),

the Court enumerated the class definition as follows:

> All current and future prisoners in IDOC custody who have been
> diagnosed, or will be diagnosed, with chronic HCV, and for whom
> treatment with DAA medication is not medically contraindicated.

2.  As of July 2019, it is estimated that approximately 3350 prisoners[5] in IDOC custody have HCV and are not medically contraindicated for treatment with DAA medication.

## IV.   Substantive Agreement.

*Health Care Services Directive 3.09a.*

1.  In response to the Court's and the plaintiffs' concerns, and to expand the scope of treatment to the offender population chronic HCV, the IDOC's revised Heath Care Service Directive 3.09a ("HCSD") outlines the treatment of offenders with HCV. The parties agree that the HCSD will be modified as set forth in Exhibit A within 14 days of the effective date of this Agreement. State Defendants agree that the HCSD will bind all medical contractors and subcontractors responsible for the medical treatment of class members.

2.  Following the implementation of the HCSD as written in Exhibit A, modification of the HCSD by IDOC in the future will be permitted so long as the modification does not operate to reduce the medical treatment of class members below the standard prescribed in the HCSD in Exhibit A.

---

[5] The total number of prisoners in IDOC that have tested positive for the hepatitis C virus antibody is 4,188 as of June 2019. Of those, approximately 20% will spontaneously clear the hepatitis C virus, leaving 3,350 as the estimated class size that is currently incarcerated.

Case 1:17-cv-00289-JMS-MJD   Document 268   Filed 10/22/19   Page 9 of 17 PageID #: 3251

3. State Defendants agree to pay for and implement universal treatment with DAAs for class members as set forth in the HCSD, subject to the terms otherwise prescribed by this Agreement.

4. Treatment exceptions will be limited to the counter-indications identified in the AASLD/IDSA HCV Guidance (i.e., short life expectancy that cannot be remediated by HCV therapy, liver transplantation, or another directed therapy), or the informed refusal of treatment;

*Treatment of Current Class.*

5. The IDOC shall abide by the following schedule of DAA treatment for class members incarcerated in the IDOC on the effective date of this agreement:

   i. Class members at APRI ≥ 1.5: all such class members must start receiving medication immediately;

   ii. Class members at APRI ≥ 0.7 but < 1.5: must start receiving medication by July 1, 2020;

   iii. Class members at APRI < 0.7 but ≥ 0.4: must begin receiving medication by July 1, 2022, subject to an appropriation of the Indiana General Assembly;

   iv. Class members at APRI < 0.4: must begin receiving medication by July 1, 2023, subject to an appropriation of the Indiana General Assembly;

   v. Named Plaintiffs, to the extent they have not already begun treatment and who are otherwise eligible for treatment, are to begin

treatment immediately following the effective date of this Agreement.

*Treatment of future class members.*

6. The IDOC shall abide by the following schedule of DAA treatment for class members newly incarcerated and/or re-infected after the effective date of this Agreement:

   i. Class members at APRI ≥ 1.5: all such class members will receive DAA medication immediately;

   ii. Class members at APRI ≥ 0.7: all such class members must start receiving DAA medication by July 1, 2021, or immediately if incarcerated or re-infected after that date;

   iii. Class members at APRI < 0.7 but ≥ 0.4:  must begin receiving medication by July 1, 2022, or immediately if incarcerated or re-infected after that date.

   iv. Class members at APRI < 0.4: all such class members must start receiving DAA medication by July 1, 2023, or immediately if incarcerated or re-infected after that date.

7. The IDOC shall request an appropriation in the 2021 Legislation Session for the treatment of HCV. Such request shall be for an amount at least equal to the number of class members currently incarcerated multiplied by the cost of a standard course of DAA medication as those numbers exist on December 1, 2020.

*Other Facets of Treatment.*

8.  If a class member doesn't currently qualify for DAAs during the phase-in period as described in section IV(5), then the patient will be re-evaluated and/or re-staged every 90 days, as set forth in the HCSD;

9.  A class member's disciplinary record does not affect eligibility for treatment.

10. With the exception of class members who have less than four (4) months remaining on their sentence after the development of a class member's HCV Individualized Treatment Plan, a class member's release date does not automatically exclude him or her from treatment;

11. Noninvasive methods, such as APRI scores or transient elastography, can be used as indicators of HCV status and progression. A class member with an established transient elastography score shall be used instead of an APRI score. A class member who has multiple APRI scores following diagnosis with HCV shall be classified using the highest APRI score, except that any APRI score generated during the first 30 days of a class member's incarceration shall not be used.

12. For purposes of determining the schedule that applies to class members as specified in sections IV(5) and IV(6), the following APRI to transient elastography conversions shall be used:

    i.   Fibrosis Level F4 or F3 → APRI score ≥ 1.5

    ii.  Fibrosis Level F2 → APRI score ≥ 0.7

    iii.   Fibrosis Level F1 → APRI score ≥ 0.4

    iv.   Fibrosis Level F0 → APRI score < 0.4

13. HCV testing will be universal but class members have the right to opt-out;

14. The State Defendants agree to provide transient elastography as clinically indicated.

*Monitoring and Review by Plaintiffs' Counsel.*

15. The IDOC recognizes that during the time that this Agreement is actively in effect, as set forth below, Plaintiffs' counsel shall have a continuing right to information and review of the treatment of class members as follows:

    i.   The IDOC will transmit any substantive revision to the HCSD within 30 days of the effective date of any change to the HCSD.

    ii.   Every 90 days, the IDOC or its agents will provide status updates to Plaintiffs' counsel, including, but not limited to, the name, IDOC number, incarceration date, estimated release date, date that HCV infection was determined, APRI score(s), transient elastography scores (if available), and estimated date when DAA medication will be administered to all class members in IDOC custody.

    iii.   If Plaintiffs' counsel has questions regarding specific class members, counsel or any experts retained by counsel may review the medical records of those class members upon request. The Stipulated Protective Order filed May 15, 2018, ECF 175, shall govern the review of all such records.

iv. Requests under sections IV(15)(ii) and (iii) must be submitted in writing via certified mail or electronically via email to the Chief Legal Officer of the IDOC. Such records will be produced to Plaintiffs' counsel within 10 days of receipt of such request.

## V. Further Proceedings.

1. State Defendants will not be required to be in full compliance with the terms of this Agreement until 90 days have passed from the effective date of this Agreement.

2. The parties will seek the administrative closure of Case No. 1:17-cv-00289-JMS-MJD after the effective date of this Agreement.

3. In the event that:

   i. The IDOC does not request an appropriation from the Indiana General Assembly for the treatment of HCV in the 2021 legislative session in an amount at least equal to the amount required by the formula contained in section IV(7), supra;

   ii. The Indiana General Assembly fails to grant an appropriation in the 2021 legislative session for the treatment of HCV in an amount at least equal to the amount required by the formula contained in section IV(7), supra; or

   iii. The IDOC does not revise the HCSD as required by this Agreement; the remedy shall be to seek to have this litigation re-opened on the merits, including, specifically, the pending motion for injunctive relief, and State

Defendants will not object based on mootness stemming from the treatment of all named Plaintiffs, nor will State Defendants object to the substitution of new named Plaintiffs.  To facilitate the substitution of plaintiffs, the IDOC will provide notice to the inmate population that any untreated inmate with HCV may contact Plaintiffs" counsel of record for purposes of becoming a named plaintiff, and State Defendants will waive the affirmative defense of failure to exhaust administrative remedies as to any substituted named plaintiff.

4.  In the event of any asserted failure to comply with any term of the settlement other than the terms described in section V(3), the IDOC shall be provided with written notice of the alleged failure. The IDOC shall have an opportunity to cure the failure within 30 days of the written notice.  Such notice shall be provided to the IDOC by sending a certified letter to the chief legal counsel of the IDOC. In the event the parties are not able to informally resolve the alleged failure within the 30-day time period, the parties shall submit the asserted failure to the magistrate assigned to this case for potential resolution between the parties. If no resolution is reached within 60 days following submission to the magistrate, Plaintiffs may take action as described in section V(5).

5.  In the event of a failure to comply with any term of the settlement other than those described in section V(3), the remedy shall be a motion to enforce

the settlement. The parties stipulate that the Southern District of Indiana shall maintain jurisdiction to enforce the settlement.

6. The pending Americans with Disabilities Act and Rehabilitation Act claims made by each of the class representatives, Charles Smith, Michael Ray Stafford, and Douglas Smith, shall be permanently stayed until (1) this case is dismissed under Section VII(1) of this Agreement, at which time these claims shall be dismissed automatically; or (2) this case is reopened on the merits under Section V(3).

## VI.  Conflict Resolution.

1. The parties agree that in the event that a term of this Agreement is in conflict with the HCSD during the active period of this Agreement, a term specified in this Agreement shall supersede a conflicting term in the HCSD.

## VII.  Termination of this Agreement.

1. It is the parties' intent that this Agreement will remain actively in effect until July 1, 2025. Absent written agreement or order of the Court, the case will automatically be dismissed without prejudice at that time. The period that this Agreement is actively in effect may be extended by written agreement of the parties or by order of the Court after a motion by either party. In the event of any extension, the case will be automatically dismissed without prejudice at the end of the extended period.

## VIII.  Attorneys' Fees.

1. State Defendants shall pay to plaintiffs' counsel the amounts of $307,359 in full satisfaction of any claims in this lawsuit for all attorneys' fees, and $4,974.00 in costs, owing as of the date of this Agreement. The payment shall be made within 60 days of: (1) the Court finding that this Settlement Agreement is fair, reasonable, and adequate pursuant to Rule 23(e) of the Federal Rules of Civil Procedure; and (2) the Court granting a motion for fees and costs under Federal Rule of Civil Procedure 23(h).

2. As noted above, Plaintiffs' counsel anticipates that they will continue to monitor this Agreement during the time that it remains in effect. Absent a final judgment or other order that allows fees to be sought pursuant to 42 U.S.C. § 1988, Plaintiffs' counsel will not seek attorneys' fees or costs for their monitoring efforts.

3. If, however, Plaintiffs' counsel assert failures to comply with this Agreement under Sections V(3) or (5), then associated fees and costs shall be by negotiated resolution of the claim or upon proper fee petition submitted to the Court by Plaintiffs.


For the plaintiffs:

By:   Mark W. Sniderman
      FINDLING PARK CONYERS WOODY & SNIDERMAN, PC
      151 N. Delaware St., Ste. 151
      Indianapolis, IN 46204
      (317) 231-1100 T
      (317) 231-1106 F
      msniderman@findlingpark.com

Robert A. Katz
INDIANA UNIVERSITY MCKINNEY SCHOOL OF LAW
530 West New York Street
Indianapolis, IN 46202
(317) 278-4791 T
rokatz@iu.edu


For the defendants:

By:   Jordan M. Stover
      Deputy Attorney General
      OFFICE OF THE ATTORNEY GENERAL
      Indiana Government Center South
      302 W. Washington St., 5th Floor
      Indianapolis, IN   46204
      Phone:  (317) 234-3089
      FAX:    (317) 232-7979
      Email:   Jordan.Stover@atg.in.gov